# Staunton

THOMAS CARLTON WANSLEY v. COMMONWEALTH OF VIRGINIA.

September 11, 1964.

Record No. 5769.

Present, All the Justices.

*Arthur Kinoy* (*L. W. Holt; William M. Kunstler*, on brief), for the plaintiff in error.

*W. P. Bagwell, Jr., Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

(In considering this case see Wansley v. Commonwealth—
Record No. 5770, this day decided)

Thomas Carlton Wansley was tried in the corporation court of the city of Lynchburg on an indictment charging him with the rape of Kyoko Fleshman. Upon the jury's verdict, finding him guilty of rape and fixing his punishment at death, final judgment was entered on February 12, 1963. We granted a writ of error to review the judgment.

The accused being 17 years of age at the time of the alleged crime, the Juvenile and Domestic Relations court of the city of Lynchburg ordered an investigation to be made upon a petition charging the rape of Mrs. Fleshman. This investigation was made pursuant to the provisions of §§ 16.1-164 and 16.1-176 of the Code of Virginia 1950, as amended. Pursuant to the order the probation officer interviewed the accused on December 10 and filed his written report recommending that the accused be tried as an adult.

At the preliminary hearing on December 13, 1962, the juvenile court adjudged that the accused could not be adequately controlled as a juvenile, ordered that he be tried as an adult, and certified the case to the corporation court to await action of the grand jury.

While the probation officer was interviewing the accused on December 10, 1962 the mother of the accused came to bring him a pair of shoes and the accused asked the jailer to have his mother call an attorney. Whereupon Reuben Lawson, a Roanoke attorney, was retained on December 12, 1962 and represented accused at the preliminary hearing and at all subsequent proceedings.

There was no appeal from the judgment of the juvenile court and the indictment for the rape of Mrs. Fleshman was subsequently returned by the grand jury. Mrs. Fleshman was a married woman of Japanese descent.

By order of February 11, 1963 the corporation court appointed Dr. Benedict Nagler, a psychiatrist, to examine the accused for the purpose of determining whether his mental condition was such that he should be committed to a mental institution for observation. Dr. Nagler's report indicated that, in his opinion, the accused was

capable of standing trial. The court also had the written report of Dr. John G. Novak, another psychiatrist, whose findings confirmed that of Dr. Nagler.

On the day of the trial defendant filed a written motion that he be committed to Central State Hospital for mental examination. The evidence of Dr. Robert D. Gardner was offered on behalf of the defendant in support of this motion. At the same time, the court heard the evidence of Dr. Novak and Dr. Nagler, both of whom testified that the defendant was competent to stand trial. Dr. Gardner, on the other hand, testified that he did not have sufficient evidence to determine whether the defendant knew the difference between right and wrong, and refused to accept this as a proper test. The trial court overruled the motion for commitment along with other motions filed by the accused.

Proof of the facts concerning the crime was made difficult because it was necessary at times to have an interpreter clarify Mrs. Fleshman's testimony.

The sufficiency of the evidence is first challenged by the accused. Suffice it to say, there was a direct conflict in the evidence between the prosecutrix and the accused as to what transpired on the occasion. The prosecutrix claimed that she was forcibly raped, while the accused claimed that the act of intercourse was with the consent of the prosecutrix and no element of rape was involved. This direct conflict in the evidence presented a jury question and was properly submitted to the jury.

The next question urged was to the effect that the accused was deprived of the assistance of counsel "at the earliest possible stage in a capital case" in violation of his rights under the Virginia and Federal constitutions.

Here petitioner claims that he should have had counsel representing him at the time he was interviewed by the probation officer. There is no merit in this assignment. *Tilton* v. *Commonwealth*, 196 Va. 774, 85 S.E. 2d 368. The only reference to any request for counsel is contained in the report of probation officer Strong where he says "During this interview with Thomas [the defendant] and this officer at the city jail, his mother came by to leave a pair of shoes. He asked the jailer to have his mother call an attorney".

This interview was conducted on December 10, 1962 and the record shows that counsel of defendant's own choosing was present and representing him on December 12. Nowhere does it appear that any request by the defendant for the assistance of counsel was

denied and nowhere is it claimed that there was any coercion or unfairness in the interrogation or treatment of the defendant. The defendant has in no way been prejudiced by the lack of counsel.

The record is clear that the accused was taken into custody on December 8, 1962, was interviewed by a probation officer on December 10, 1962 and received counsel of his own choice on December 12, pursuant to the request of December 10.

The sole purpose of the interview between the probation officer and the defendant was to determine the question as to whether or not he should be tried as a juvenile or an adult. And it is not contemplated or necessary that counsel for the accused be present at this interview.

The examination of the accused by the police officers was clearly in no way prejudicial to the accused for in this examination the accused stated to the police officers only those things which he admitted and testified to throughout his defense, which were to the effect that the intercourse had with this prosecutrix was entirely with her consent. *Cicenia* v. *Lagay*, 357 U.S. 504, 78 S. Ct. 1297, 2 L. ed. 2d 1523; *Crooker* v. *California*, 357 U.S. 433, 78 S. Ct. 1287, 2 L. ed. 2d 1448; *Watts* v. *Indiana*, 338 U.S. 49, 57, 62, 69 S. Ct. 1347, 1357, 93 L. ed. 1801, 1807, 1810. (But compare *Escobedo* v. *Illinois* (June 22, 1964), 378 U.S. 478, 84 S. Ct. 1758, 12 L. ed. 2d 977.)

We hold that the accused was at no time denied the assistance of counsel, but, on the contrary, had counsel of his own choosing representing him at all necessary stages.

The crucial question presented in this case is the assignment that the trial judge interfered with the exclusive jurisdiction of the jury in fixing the penalty in violation of the statute (§ 18.1-44 Code of Virginia 1950) and petitioner's right to a fair trial.

In this connection it appears that the jury had retired to the jury room to consider of their verdict. After a while they returned into court and the following exchange occurred between the foreman of the jury and the judge.

"The Court: Who is the foreman?

"Mr. Booth (Foreman): I am, sir. We have not—

"The Court: Wait until you all get out. You may stand right there, if you like.

"Mr. Booth (Foreman): We have not reached a final verdict, sir.

"The Court: Wait until you all get out. All right, gentlemen. I do not believe you have reached a verdict yet, is that correct?

"Mr. Booth (Foreman): That is correct.

"The Court: It is about time for dinner. I was wondering—I am not trying to rush you, if you want to consider it a little longer, if that is what you want to do, I would be glad to let you do it. If you want to go out and have dinner and come back and consider—

"Mr. Booth (Foreman): We didn't come, Your Honor, to request a recess, we came for instructions. I don't know enough about court procedures to determine whether this is to be—our inquiry is to be made in the privacy of your Chambers or the courtroom.

"The Court: No, sir. No, sir. Go ahead and make it right here, anything you would like to know.

"Mr. Booth (Foreman): We would like to know, sir, what is implied—and this may be an improper question; that is why we are a little hesitant to ask it.

"The Court: If it is something that I cannot answer, I won't answer. Go ahead.

"Mr. Booth (Foreman): What is implied with regard to the term of sentence if the accused should be found guilty with a life sentence?

"The Court: What do you mean 'what is implied'?

"Mr. Booth (Foreman): I mean what is implied with regard to the term, a life term until—until the end of his life?

"The Court: That is a question that I don't think the Court can answer. The Parole Board has certain laws and regulations that they are governed under, and what happens to a person after he is committed or sentenced to the penitentiary is not the Court's prerogative. We cannot do anything concerning that. They have certain powers, rules and regulations. You should find your verdict on what you think is a proper sentence for the crime committed, and not be concerned as to what, if anything, will happen to him at some future time.

"Mr. Booth (Foreman): Very well. May we retire?

"The Court: I will tell you this: The Governor has powers, the Court has powers, and the Parole Board has powers, and we just cannot go into all the powers and ramifications.

"You should find a verdict based on what you think to be a fair and just punishment under the facts and circumstances, and then if anything upsets that at a later time, or changes, that is not of your concern.

"Mr. Booth (Foreman): Very well. May we retire to the jury-room? We think we may reach a verdict.

"The Court: You may retire. Mr. Booth. I will say in five or

ten minutes if you have not reached a verdict and you want to con-
sider it longer, go ahead; if you have not and you want to go to
dinner and then come back and consider it further, just sound the
buzzer and we will let you out.

"Mr. Booth (Foreman): Very well."

Note: The jury retired at 6:13 P.M. and returned at 6:35 P.M.
The jury is seated and polled, and the hearing is resumed as follows:

"The Court: Gentlemen of the jury, have you agreed upon a
verdict?

"Mr. Booth (Foreman): We have sir.

"The Court: All right, sir. Turn it over to the Clerk.

"Mr. Martin [Clerk]: Stand up, Thomas Carlton Wansley. 'We,
the jury, find the accused, Thomas Carlton Wansley, guilty of rape
as charged in the within indictment. The punishment there for is
by death. Augustus Lee Booth, Foreman.' So say you all?"

Note: The jury reply is in the affirmative.

We hold that the remarks of the judge in answer to the jury's
question were improper and constitute reversible error. The jury
more than likely desired to give this defendant a life sentence pro-
vided such a sentence meant what it said and could not be interfered
with. It is more than probable that upon learning from the court
that a life sentence could be interfered with and that the accused
could be later released from imprisonment, the death sentence was
decided upon.

We said in *Coward* v. *Commonwealth,* 164 Va. 639, 646, 178
S.E. 797, 799, "It is error for the court, by its instructions, * * *,
to tell the jury that its sentence imposed and confirmed may be set
aside or cut down by some other arm of the State. It is their [the
jury's] duty to inflict such punishment as appears to be just and
proper and this is the full measure of their duty".

In the *Jones* v. *Commonwealth* case, 194 Va. 273, 275, 72 S.E.
2d 693, 694 the foreman stated to the court that the jury had decided
that the defendant was guilty of murder in the first degree, but they
wanted to know whether if they gave him life imprisonment, a term
of 99 years, or any long term of years, they would have any assurance
that the defendant would not "get out". The court told the jury
that "it could not give that assurance; that would be in the hands of
the executive branch of the government and that the court was of
the judicial branch; that you and I represent the judicial branch and
have nothing to do with that".

We pointed out in the *Jones* case, at page 275, that "the proper response to inquiries of the kind here made was stated in *Coward* v. *Commonwealth*, 164 Va. 639, 178 S.E. 797, in effect to be that it is the duty of the jury if they find the accused guilty to impose such punishment as they consider to be just under the evidence, and within the limits stated in the court's instructions; and that they must not concern themselves with what may afterwards happen".

We adhere to our ruling in the *Coward* and *Jones* cases and hold that the colloquy between the court and the foreman of the jury in the instant case constituted reversible error. For the foregoing reason the judgment complained of is reversed and the case is re-manded for a new trial.

*Reversed and remanded*