Richmond

# FRANK L. HINTON

v.

# COMMONWEALTH OF VIRGINIA

October 6, 1978.

Record No. 771305.

Present: All the Justices.

O.L. Gilbert (Rabinowitz, Rafal & Swartz, on brief) for appellant.

Robert H. Anderson, III, Assistant Attorney General (Marshall Coleman, Attorney General on brief) for appellee.

COMPTON, J., delivered the opinion of the Court.

Defendant Frank L. Hinton, convicted by a jury of malicious wounding, appeals the May 1977 final order which sentenced him in accordance with the verdict to 20 years' imprisonment. We have limited the writ of error to consideration of whether the trial court misinstructed the jury in response to a question concerning parole eligibility of a person sentenced to the penitentiary.

The issue arose in the following manner. After deliberating for about one and one-half hours, the jury returned to the courtroom with an inquiry for the trial judge. The foreman stated: "Your Honor, the question was brought up about what part of a sentence a person would have to serve before being paroled." The trial judge responded:

"The answer that the Court is required to give you, is not going to be satisfactory; but we operate under instructions imposed by the Supreme Court of Virginia, and in case I answer your question wrong, it might cause this whole trial to be in vain.

"The answer that I understand I am required to give you, is that while there is a system for the early release of prisoners, that it is within the province of the Correctional System of this State and is not the concern of the Court, nor is it the concern of the jury.

"Your jury function, is to resolve the facts and determine guilt or innocence and to fix any punishment, if that be the case; and once that decision has been made by a jury, the Court then has the function to impose that decision upon the defendant, and the jury is to look no further into the verdict or determine what, if anything else, it wants to do or should do with their verdict, as it is then up to the Correctional System to determine when an individual is to be released from custody.

"Sometimes people never serve their entire sentence and get off with good behavior or for becoming disciplined or rehabilitated in confinement, and never serve their entire sentence, but are considered for early release at some point when they are in confinement; and when that is, is a matter that is entirely up to the Parole Board and is not for the Court or jury to be concerned about.

"I would like to answer you further, but I'm restricted from doing that and I don't want to trespass on the prerogatives set by the Supreme Court instructions; I would like to advise you about the possibility of early release, but I'm not allowed to tell you what it is

in order that you may take it into consideration when you fix punishment, if you decide punishment is to be imposed in this case."

The defendant objected to the trial court's statement and moved for a mistrial. The objection was overruled and the motion was denied.

Five minutes after returning to its room, the jury announced it had reached a verdict. It found the defendant guilty and fixed his punishment at the maximum sentence allowed by law. Code § § 18.2-51 & -10(c).

The sole issue presented is: Was the court's oral instruction erroneous and, if so, was such error prejudicial to defendant?

The defendant contends that reversible error was committed relying on *Wansley* v. *Commonwealth*, 205 Va. 412, 137 S.E.2d 865 (1964), *cert. denied*, 380 U.S. 922 (1965); *Jones* v. *Commonwealth*, 194 Va. 273, 72 S.E.2d 693 (1952); and *Coward* v. *Commonwealth*, 164 Va. 639, 178 S.E. 797 (1935). The Attorney General argues that the trial court's statement was proper. Seeking factually to distinguish *Wansley*, *Jones* and *Coward*, he urges that when the statement here is "analyzed in its entirety", it is consistent with the rule enunciated in those cases. In the alternative, the Commonwealth contends that any error which was committed "was not sufficiently prejudicial so as to justify a reversal in this case." We do not agree with either prong of the Commonwealth's argument.

■ Whatever may be the rule in other jurisdictions (see cases collected in Annot., 35 A.L.R.2d 769), Virginia is committed to the proposition that the trial court should not inform the jury that its sentence, once imposed and confirmed, may be set aside or reduced by some other arm of the State. *Coward* v. *Commonwealth*, 164 Va. at 646, 178 S.E. at 799-800. In response to the oft-asked question concerning parole eligibility, the trial judge should only tell the jurors that if they find the accused guilty, they must impose such sentence, within the limits fixed by law, as appears to be just and proper, and that what might afterwards happen is of no concern to them. *Id.*; *Wansley* v. *Commonwealth*, 205 Va. at 417-18, 137 S.E.2d at 869-70; *Jones* v. *Commonwealth*, 194 Va. at 278, 72 S.E.2d at 696. *See McCann* v. *Commonwealth*, 174 Va. 429, 447-48,

4 S.E.2d 768, 775 (1939). *See also Dingus v. Commonwealth*, 153 Va. 846, 851-52, 149 S.E. 414, 415 (1929) (prosecutor's argument commenting on possibility of pardon improper and prejudicial).

■ Under our system, the assessment of punishment is a function of the judicial branch of government, while the administration of such punishment is a responsibility of the executive department. The aim of the rule followed in Virginia is to preserve, as effectively as possible, the separation of those functions during the process when the jury is fixing the penalty, in full recognition of the fact that the average juror is aware that some type of further consideration will usually be given to the sentence imposed.

■ In this case, the comments of the trial judge far exceeded the confines established by our case law. Repeated references were made to parole, pardon, and credit against punishment for good behavior, all of which are, of course, authorized methods of administrative intervention with sentences fixed by the judicial department. The system of "early release of prisoners" was discussed in the second paragraph of the verbal instruction; the duties of the correctional officials were alluded to in the third paragraph; and early release, either because of good behavior or rehabilitation, was reviewed in the fourth and fifth paragraphs. These comments were broader than the trial court's erroneous statement in *Coward*, which specified how credit for good behavior was computed. The statements exceeded the scope of the instruction condemned in *Jones*, which advised that the trial court could not give the jury any assurance that the defendant would not "get out" if a sentence to a long term of years was imposed. This instruction was similar to the improper response in *Wansley*, which discussed the post-sentence responsibilities of not only the trial court but those of the Governor and the Parole Board.

■ And we cannot say that the error here was not prejudicial to the accused. As the defendant argues, the jury's question would have been necessary only if one or more of the jurors contemplated voting for a sentence less than the maximum; the inquiry would have been superfluous if the jury had already decided to assess the twenty-year penalty. Thus, as a result of the improper emphasis on post-verdict procedures, we believe it was likely that some member of the jury, influenced by the improper remarks,

agreed to fix the maximum penalty, when he or she otherwise would have voted for a lesser sentence. Consequently, prejudice to the defendant is manifest.

For these reasons, the judgment of conviction will be reversed and the case remanded for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*