OVERTON, Judge.
Robert Mack Walker was convicted by a jury of forgery, uttering, grand larceny, and two counts of robbery. He appeals, claiming that (1) the evidence is insufficient to support the convictions for forgery, uttering, grand larceny, and robbery; and (2) he should have been granted a proffered *56 instruction informing the jury that parole has been abolished in Virginia.
I. Facts
On August 7, 1995, just before midnight, Mary Person and her aunt were stopped at a Race Trac Gas Station off Midlothian Turnpike in southside Richmond. When Person was getting back into her car and about to shut the door, the door flew open. A man later identified by Person as Robert Mack Walker threw his shoulder into hers and pushed her over. Walker drew a knife and put it in Person’s side and asked for all of her money. Person threw her pocketbook and her aunt’s pocketbook at Walker. When another motorist drove up, Walker fled with Person’s wallet.
The next day Walker presented two of the checks stolen from Person’s purse to two tellers at separate First Virginia Bank branches. For the first he received $300; the other was refused. He was subsequently indicted for two counts of forgery, two counts of uttering, one count of grand larceny, and two counts of robbery.
At trial, Person testified that her checkbook had been in her wallet. She identified checks numbered 525 and 526 as coming from the stolen checkbook, and she stated that the signature on the checks was not hers. Person later identified Walker from a photospread.
Lisa Cooper, a teller at First Virginia Bank, testified that she handled check 526 on August 8, 1995, the day after the robbery, made out to Robert Walker. She identified the teller stamp and her handwriting on the back. She testified that the identification card she examined bore the photograph of the same man who cashed the check. The information that she copied from the identification card matched the personal information from Walker’s identification card. Six photos from the bank’s security camera corroborated Walker’s presence at the bank at the time.
James Carter, a teller at another First Virginia Branch, also testified that Walker gave him a check on August 8,1995. He *57 copied Walker’s personal information from Walker’s identification onto the back of the check. He also checked whether the person presenting the check was the same person as the identification card represented. When Carter was handed the check to identify at trial, both he and the Commonwealth’s attorney called it check 526, the same number as the check that Cooper had identified. Both checks 525 and 526 were admitted into evidence.
Walker testified on his own behalf. He stated that he had been at the gas station at approximately the time of the robbery. He also admitted receiving one of the checks from an acquaintance on August 8, 1995. Walker testified that he had done some painting for a woman named Elaine, and he thought the check was in return for that work, the E. in Mary E. Person standing for Elaine. He took the check to the first bank and cashed it. He denied receiving the second check and denied ever going to the second branch.
At the close of the Commonwealth’s evidence, defendant moved to strike because of the discrepancy in the check numbers. Defendant argued that check 526 was identified by both tellers as the check they handled. The court agreed that the Commonwealth’s attorney handed one of the witnesses the wrong check, but overruled the motion to strike. The defendant renewed his motion at the close of all evidence and was again overruled. The jury found the defendant guilty on all counts.
Before the jury deliberated on sentencing, the defendant offered a jury instruction stating that the Commonwealth of Virginia has abolished parole for all felonies that were committed after January 1, 1995. The judge ruled that, because this was not a capital murder case, he was refusing the instruction. The jury fixed Walker’s sentence at ten years for each robbery count, two years for each forgery count, six months on each uttering count, and one year for the grand larceny.
At the sentencing, Walker rearticulated the argument for the previous motion to strike and moved to set aside the verdict. He argued that both tellers identified the same check *58 and that therefore all the convictions should be set aside. The judge agreed that evidence was lacking on one check, although he was not sure which. He refused to set aside the convictions on both checks, stating that “one of them was obvious” and that the Commonwealth merely “made a mistake on the check and gave the witness the wrong check.” He did set aside the forgery and uttering convictions on check number 526.
II. Sufficiency of the Evidence
A.
We hold that the evidence is sufficient to support the convictions for forgery, uttering, and grand larceny. “Larceny is defined as the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently.” Jones v. Commonwealth, 3 Va.App. 295, 300, 349 S.E.2d 414, 417 (1986). If the goods are valued at $200 or more, the offense is grand larceny. See Code § 18.2-95. Walker admitted receiving $300 from the bank in return for one of the forged checks. The evidence is sufficient for a jury to conclude that Walker fraudulently induced the bank to give him this money and that he did not intend to return it. All of the elements of grand larceny having been established, we affirm this conviction.
All of the elements of forgery are also established. “Forgery is the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability.” Moore v. Commonwealth, 207 Va. 838, 841, 153 S.E.2d 231, 233 (1967); Bullock v. Commonwealth, 205 Va. 558, 561, 138 S.E.2d 261, 263 (1964). Person testified that the signature on the checks was not her own. By presenting the checks to the bank tellers, Walker demonstrated a clear intent to defraud. The checks were therefore forged. The evidence does not prove conclusively that Walker himself signed Person’s name on the checks, but such proof is not required. “Possession of *59 a forged check by an accused, which he claims as a payee, is prima facie evidence that he either forged the instrument or procured it to be forged.” Fitzgerald v. Commonwealth, 227 Va. 171, 174, 313 S.E.2d 394, 395 (1984). Walker admitted the possession of one of the two forged checks in evidence, whether number 525 or number 526. The jury was therefore entitled to believe beyond a reasonable doubt that Walker either forged the check or procured it to be forged. The record supports a conviction for forgery.
Uttering is an offense separate from forgery. See Bateman v. Commonwealth, 205 Va. 595, 599, 139 S.E.2d 102, 105 (1964); Johnson v. Commonwealth, 102 Va. 927, 929, 46 S.E. 789, 790 (1904). “The word ‘utter’ is defined in Black’s Law Dictionary, 4th ed., page 1716, as meaning ‘To put or send [as a forged check] into circulation. * * * to utter and publish.’ It is an assertion by word or action that a writing known to be forged is good and valid.” Bateman, 205 Va. at 599-600, 139 S.E.2d at 106 (alteration in original). Walker’s possession of the forged check allows the inference that Walker knew it to be forged. Walker clearly put this forged check into circulation, as evidenced by, inter alia, his presence at the bank captured on a bank security camera and his own admission. The fact that the two check numbers were confused at trial does not alter this fact. The conviction for uttering is affirmed.
B.
Walker attacks his robbery convictions on the ground that Person’s identification was incredible. Person’s testimony is clearly not incredible. She chose him from a lineup, and her identification was later verified by the fact that Walker admitted his presence at the gas station and was found in possession of her checks the next morning. The credibility of the witness and the weight accorded her testimony “are matters solely for the fact finder, who has the opportunity to see and hear that evidence as it is presented.” Sandoval v. Commonwealth, 20 Va.App. 133, 138, 455 S.E.2d 730, 732 *60 (1995); see Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985).
Furthermore, sufficient evidence was present to prove that Walker was the robber, even without the eyewitness identification. The jury rejected the defendant’s explanation for his possession of the check, and in doing so inferred his consciousness of guilt from that lie. See Welch v. Commonwealth, 15 Va.App. 518, 525, 425 S.E.2d 101, 106 (1992). “A defendant’s false statements are probative to show he is trying to conceal his guilt, and thus is evidence of his guilt.” Rollston v. Commonwealth, 11 Va.App. 535, 548, 399 S.E.2d 823, 831 (1991) (citing Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982)). Accordingly, the robbery convictions are affirmed.
III. Jury Instruction
Walker next argues that the trial judge erred by refusing an instruction informing the jury that Walker was ineligible for parole under Virginia law. The proffered instruction read:
The Commonwealth of Virginia has abolished parole for all felonies that were committed after January 1,1995.[1]
The trial judge ruled that because this was not a capital case, he would not instruct the jury about parole considerations, adding, “It is none of their business.”
A.
Virginia has a long and honored system of jury sentencing. Juries have been empowered to sentence their peers in the Commonwealth from as early as 1776. See 9 Laws of Va. 170 (Hening 1821); see also Note, Jury Sentencing in Virginia, 53 *61 Va. L.Rev. 968, 971 (1967). This phenomenon did not arise by-accident; the General Assembly made a conscious decision to depart from the common law, under which the court sentenced the defendant. See Mackaboy v. Commonwealth, 4 Va. (2 Va.Cas.) 268, 271 (1821) (noting that the statute in question was copied from an older law, “with this difference only, that by our Law the fine as assessed by the jury, and under the English Laws, by the Justices”). Our tradition continues today. Only seven other states allow the jury to sentence offenders in noncapital cases. See Ark.Code Ann. §§ 5-4-103, 16-90-107 (WESTLAW through 1995 Sess.); Ky.Rev.Stat. Ann. § 532.055(2) (West, WESTLAW through 1996 Reg. Sess.); Miss.Code Ann. §§ 97-3-67, 97-3-71 (WESTLAW through 1996 Reg. Sess.) (limited powers); Mo. Ann. Stat. § 557.036 (Vernon, WESTLAW through 1996 2d Reg. Sess.) (limited powers); Okla. Stat. Ann. tit. 22, §§ 926-928 (West, WESTLAW through 1996 2d Reg. Sess.); Tenn.Code Ann. §§ 40-20-104, 40-20-107 (WESTLAW through 1996 2d Reg. Sess.); Tex.Code Crim. Proc. Ann. art 37.07 (West, WEST-LAW through 1995 Reg. Sess.).
When juries set sentences, they may consider certain information. The Supreme Court of Virginia definitively set forth the rule over sixty years ago:
These jurors should have been told that it was their duty, if they found the accused guilty, to impose such sentence as seemed to them to be just. What might afterwards happen was no concern of theirs.
Coward v. Commonwealth, 164 Va. 639, 646,178 S.E. 797, 800 (1935). Over time the Court has reiterated Virginia’s commitment to this principle, even while recognizing that other jurisdictions may not agree. See Hinton v. Commonwealth, 219 Va. 492, 495, 247 S.E.2d 704, 706 (1978) (noting the existence of contrary cases). As the Supreme Court has stated, the correct response when the jury asks about parole is:
The only response I can give you on that ... is that it’s the function of the jury, duty of the jury, to impose such *62 sentence as they consider just under the evidence and the instructions of the Court.
And you should not concern yourself with what may thereafter happen.
Peterson v. Commonwealth, 225 Va. 289, 296-97, 302 S.E.2d 520, 525 (1983); see also Clagett v. Commonwealth, 252 Va. 79, 94, 472 S.E.2d 263, 272 (1996); Wansley v. Commonwealth, 205 Va. 412, 416, 137 S.E.2d 865, 868 (1964); Jones v. Commonwealth, 194 Va. 273, 274, 72 S.E.2d 693, 694 (1952); Virginia Model Jury Instruction 1-25. Our long line of precedents has led this Court to remark that “[i]t is well-established in Virginia that a jury is not to concern itself with post-sentencing events.” Kitze v. Commonwealth, 15 Va.App. 254, 260, 422 S.E.2d 601, 605 (1992), rev’d on other grounds, 246 Va. 283, 435 S.E.2d 583 (1993) (agreeing that the jury has no right to be advised of post-sentencing events); see also Mosby v. Commonwealth, 24 Va.App. 284, 482 S.E.2d 72 (1997).
The principal rationale underlying our system of sentencing is founded in the basic concept of separation of the branches of government. The assessment of punishment lies within the purview of the judicial branch; the administration of such punishment within that of the executive branch. The rule in Virginia aims to preserve, as effectively as possible, the separation of these functions. See Hinton, 219 Va. at 496, 247 S.E.2d at 706; Coward, 164 Va. at 646, 178 S.E. at 799-800; Dingus v. Commonwealth, 153 Va. 846, 852, 149 S.E. 414, 415 (1929). The jury’s duty is to sentence the defendant according to the evidence in the trial and within the limits set by the General Assembly for the crimes committed. Pardons, parole, credit for good behavior, and the like are factors outside of the scope, and certainly the control, of the jury. Consideration of these possibilities should not hamper the jury’s ability to perform its duty.
Other secondary reasons have been advanced to support Virginia’s policy. In Fitzgerald v. Commonwealth, 249 Va. 299, 455 S.E.2d 506 (1995), cert. denied, — U.S.-, 116 S.Ct. 1279, 134 L.Ed.2d 224 (1996), the Supreme Court of *63 Virginia affirmed the refusal of a jury instruction which stated:
The court instructs the jury that under Virginia law any person convicted of three separate felony offenses of murder, rape or robbery by the presenting of firearms or other deadly weapon or any combination of the offenses of murder, rape or robbery when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole.
Id. at 305, 455 S.E.2d at 510. The Court found that, were the jury to consider this instruction, it would be determining law rather than fact, thus invading the realm of the judge. “The question whether an accused is parole eligible in Virginia is a question of law that may not be considered by a jury.” Id. at 306, 455 S.E.2d at 510.
On a more practical level, consideration of post-sentencing events would lead the jury to speculate as to the probable time actually served on a sentence. To inform the jury that credit for good behavior exists may invite the jury to attempt to compensate for the credit, resulting in a sentence longer than the jury intended to impose. See Coward, 164 Va. at 642, 178 S.E. at 798. Similarly, if the jury is informed of credit for good behavior, to be fair it should also be informed of the workings of the parole system, the possibility of pardons, work-release programs, commitments to the Department of Mental Health, and every other alternative method which may affect the amount of time the defendant may actually be confined. This sheer volume of information would pose a tremendous obstacle to efficient and just jury sentencing.
B.
In the instant case, Walker asserts that Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), requires the judge to grant an instruction informing the jury that the defendant is not eligible for parole. The constitutional requirements of Simmons do not apply to non-capital felony cases. See Mosby, 24 Va.App. at 290, 482 *64 S.E.2d at 74. Instead, the general rule governs. A state may make its own determination about what a jury will or will not be told about sentencing. See California v. Ramos, 463 U.S. 992, 1014, 103 S.Ct. 3446, 3460, 77 L.Ed.2d 1171 (1983). “[T]he wisdom of the decision to permit juror consideration of [post-sentencing events] is best left to the States.” Id.; see Simmons, 512 U.S. at 183, 114 S.Ct. at 2204 (Scalia, J., dissenting).
Code § 19.2-295.1 provides, in pertinent part:
In cases of trial by jury, upon a finding that the defendant is guilty of a felony, a separate proceeding limited to the ascertainment of punishment shall be held as soon as practicable before the same jury____ After the Commonwealth has introduced such evidence of prior convictions, or if no such evidence is introduced, the defendant may introduce relevant, admissible evidence related to punishment.
The question before us today is whether parole eligibility is “relevant to punishment.” In the past, the Supreme Court of Virginia has made it abundantly clear that it is not. “Information regarding parole eligibility is not relevant evidence to be considered by the jury.” Eaton v. Commonwealth, 240 Va. 236, 248, 397 S.E.2d 385, 392 (1990) (citing Spencer v. Commonwealth, 240 Va. 78, 85, 393 S.E.2d 609, 613 (1990)); see Watkins v. Commonwealth, 238 Va. 341, 351, 385 S.E.2d 50, 56 (1989); Williams v. Commonwealth, 234 Va. 168, 178-80, 360 S.E.2d 361, 367-68 (1987); Poyner v. Commonwealth, 229 Va. 401, 418-19, 329 S.E.2d 815, 828 (1985).
Walker argues that because the General Assembly has now abolished parole for all persons convicted of felonies committed after January 1, 1995, that fact has become relevant to punishment. We disagree.
We doubt not that the'jury’s beliefs about parole may influence, in some cases, a jury’s decision on the length of the sentence, although Walker does not argue this theory on brief *65 and we can find no empirical evidence to support it.[2] Merely because a fact may influence a jury’s decision, however, does not render it relevant within the meaning of the statute.
Our Supreme Court has found that the jury may consider “evidence in mitigation of the offense relevant to the defendant’s past record and the nature of his conduct in committing the crime.” Coppola v. Commonwealth, 220 Va. 243, 254, 257 S.E.2d 797, 805 (1979); see Sheppard v. Commonwealth, 250 Va. 379, 391, 464 S.E.2d 131, 138 (1995). Additionally, victim impact statements are also relevant to punishment, at least in capital sentencings. See Weeks v. Commonwealth, 248 Va. 460, 476, 450 S.E.2d 379, 389 (1994). The specific harm caused by the defendant is probative of ‘“the defendant’s moral culpability and blameworthiness.’” Weeks, 248 Va. at 476, 450 S.E.2d at 390 (quoting Payne v. Tennessee, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991)). These factors are relevant to punishment because they concern the defendant himself, the nature of the offense, and the effects of his offense. See Mosby, 24 Va.App. at 292, 482 S.E.2d at 75.
In contrast, the Virginia Supreme Court has also ruled on several types of information not relevant to punishment. “Evidence as to the result of another defendant’s trial for the same crime is irrelevant to the determination by the jury of the appropriate punishment for the defendant whose sentence is being weighed.” Coppola, 220 Va. at 254, 257 S.E.2d at 805; Sheppard, 250 Va. at 390-91, 464 S.E.2d at 138. Under the mandated statutory review of capital cases, the Supreme Court must compare the sentence in a particular case to similar cases, but a jury has no such responsibility. *66 See id. The Supreme Court has also held that a jury should not consider “residual doubt” about guilt while sentencing, see Stockton v. Commonwealth, 241 Va. 192, 211, 402 S.E.2d 196, 207 (1991), nor the possibility that later-discovered evidence may demonstrate the innocence of the defendant. See Frye v. Commonwealth, 231 Va. 370, 393, 345 S.E.2d 267, 283 (1986). All of these factors might tend to influence a jury’s decision as to the amount of confinement, but they are not “relevant to punishment.”
Relevant factors concern the defendant’s character— his past record and moral culpability at time of the offense— and the offense itself — the nature of the defendant’s behavior and the impact on the victim. Those not relevant to sentencing concern independent events occurring after the offense — a codefendant’s trial, residual doubt by the jury, or the possibility of new evidence. These factors involve matters over which the defendant has no control and for which he has no blame. Whether or not the defendant is eligible for parole falls squarely within the second category. This rationale is further supported by the fact that all convicted felons are now parole-ineligible: that status now has absolutely no dependence on a particular defendant’s character or culpability.
We are not persuaded by the argument that the jury will impose a more severe sentence under the false belief that parole exists. A jury is charged to fix a sentence within the statutory range, commensurate with the nature of the offense. We shall not presume that our juries routinely disobey this charge by speculating as to parole possibilities.[3]
We note that an instruction informing the jury that parole has been abolished may mislead the jury into thinking that the defendant will serve all of the time it imposes; under the Code *67 a convicted felon is still entitled to accumulate credit for good behavior. See Code § 58.1-202.3.[4] Additionally, because parole has not been absolutely abolished, see note 1, supra, the jury would have to make a legal determination that this defendant is in fact ineligible for parole: a role reserved for the judge. See Fitzgerald v. Commonwealth, 249 Va. 299, 306, 455 S.E.2d 506, 510 (1995), cert. denied, — U.S.-, 116 S.Ct. 1279, 134 L.Ed.2d 224 (1996). Finally, the trial judge, who is aware of the parole laws, has the power to modify any jury sentence, within statutory limits. A defendant given an extraordinarily harsh sentence, therefore, has recourse. “[U]nder the Virginia practice, the punishment as fixed by the jury is not final or absolute, since its finding on the proper punishment is subject to suspension by the trial judge, in whole or in part, on the basis of any mitigating facts that the convicted defendant can marshal.” Vines v. Muncy, 553 F.2d 342, 349 (4th Cir.1977). While judges in the Commonwealth typically respect the jury’s recommendation, modification of a jury’s sentence is not uncommon.[5]
Juries in Virginia are neither required nor entitled to consider parole eligibility, either by the federal Constitution or the law extant in the Commonwealth. This rule is based on the separation between the branches of government as well as compelling practical considerations. The recent amendment to the parole laws does not require us to depart from the rule. We find that Walker was not entitled to his requested instruction.
For the reasons stated, we affirm the convictions.

Affirmed.

. We note that this instruction is not entirely accurate as a matter of law. Exceptions to this general statement exist in the Code. See, e.g., Code § 19.2-311 (granting a discretionary exception for persons between the age of eighteen and twenty-one convicted of a felony not punishable as a Class 1 felony); Code § 53.1-40.01 (allowing petitions for parole from older prisoners convicted of a felony other than a Class 1 felony).

. See generally Virginia Criminal Sentencing Commission 1996 Annual Report 32 (1996) (noting that "[i]t has been speculated that juries may not be fully aware of the implications of parole abolition and truth in sentencing and may be inflating their sentences”); Robert A. Weninger, Jury Sentencing in Noncapital Cases: A Case Study of El Paso County, Texas, 45 J. Urb. & Contemp. L. 3, 13 (1994) (asserting without support that "almost everyone understood that only rarely would the offender serve the entire sentence”).

. The jury in this case was instructed to sentence Walker to life imprisonment or a period of not less than five years on each of the two robbery charges. The jury fixed the sentence at ten years for each charge, leading the trial judge to comment, when asked to reduce the sentence, "I really don't see where the verdicts are out of line, probably more accurate than the sentencing guidelines.”

. The Code allows a prisoner convicted of a felony committed after January 1, 1995, to earn a maximum credit of four and one-half days for each thirty days served. Therefore, a prisoner has the potential to serve only 85% of his time, or eight and one-half years out of every ten sentenced.

. In 1996, judges modified 20% of the total number of jury sentences reported to the Virginia Criminal Sentencing Commission. See Annual Report at 34.