BENTON, Judge,
dissenting.
By statute, the General Assembly has mandated that “[a]ny person sentenced to a term of incarceration for a felony *73 offense committed on or after January 1, 1995, shall not be eligible for parole upon that offense.” Code § 53.1-165.1. I would hold that the trial judge erred in denying Walker’s proposed instruction, which would have informed the jury that parole has been abolished in Virginia.[10] I therefore dissent.
I.
The majority opinion essentially relies upon this Court’s recent decision in Mosby v. Commonwealth, 24 Va.App. 284, 482 S.E.2d 72 (1997), and cases decided upon proceedings that arose under recently abandoned sentencing procedures and before parole was abolished.[11] Although this Court in Mosby *74 held “that in noncapital felony cases a trial judge is not required to instruct the jury that the defendant, if convicted, will be ineligible for parole,” id. at 286, 482 S.E.2d at 72, I believe that decision fails to take into account the effect of the significant statutory changes in Virginia law.
In addition to abolishing parole, the General Assembly revised jury sentencing procedures to provide for bifurcated jury trials in non-capital felony prosecutions. See Code § 19.2-295.1. Code § 19.2-295.1 fundamentally changed the nature of sentencing proceedings in non-capital jury trials. As a result, the concerns that previously justified depriving the jury of information concerning parole no longer exist.[12]
Under the previous sentencing scheme, juries in non-capital cases would both determine guilt and impose a sentence after a single, unitary trial. The only criteria juries could consider in sentencing were the range of punishment for the offense and the facts germane to the commission of the offense. “The theory of our [previous] unitary jury trial [procedure was] that the jury [was] to sentence the offense rather than the offender.” Smith v. Commonwealth, 223 Va. 721, 725-26, 292 S.E.2d 362, 365 (1982) (Russell, J., dissenting). Thus, evidence of aggravating and mitigating factors was not admissible before the jury at the trial of a non-capital criminal offense. See Weeks v. Commonwealth, 248 Va. 460, 476, 450 S.E.2d 379, 389-90 (1994); Duncan v. Commonwealth, 2 Va.App. 342, 345-47, 343 S.E.2d 392, 394-95 (1986). By contrast, under the new procedure, at the separate sentencing hearing, “the Commonwealth shall present the defendant’s prior criminal convictions,” Code § 19.2-295.1, and the defendant may introduce relevant mitigating evidence. See Pierce v. Commonwealth, *75 21 Va.App. 581, 466 S.E.2d 130 (1996). The new bifurcated procedure therefore permits an inquiry that is significantly broader in scope.[13]
In addition, within the context of the former unitary trial procedure, the Supreme Court enunciated the rule that in a non-capital jury sentencing “the trial [judge] should not inform the jury that its sentence, once imposed and confirmed, may be set aside or reduced by some other arm of the State.” Hinton v. Commonwealth, 219 Va. 492, 495, 247 S.E.2d 704, 706 (1978). Significantly, the Supreme Court noted that “[t]he aim of the rule ... [was] to preserve, as effectively as possible, the separation of ... [the] functions [of the judicial and executive branches] during the process when the jury is fixing the penalty, in full recognition of the fact that the average juror is aware that some type of further consideration will usually be given to the sentence imposed.” Id. at 496, 247 S.E.2d at 706. In crafting the new sentencing scheme, however, the General Assembly eliminated parole — the mechanism used by the executive branch to reduce jury sentences. Thus, the need to separate the sentencing function of the judiciary from the role of the executive branch in granting parole is no longer a consideration.[14]
*76 The Supreme Court also reasoned in Jones v. Commonwealth, 194 Va. 273, 72 S.E.2d 693 (1952), that a jury should not be informed of parole eligibility because “[s]uch a practice would permit punishments to be based on speculative elements, rather than on the relevant facts of the case, and would lead inevitably to unjust verdicts.” Id. at 279, 72 S.E.2d at 697. However, because the law today is unambiguous — parole is completely unavailable to all convicted felons — the jury’s consideration of that fact would not be speculative. On the contrary, informing the jury of the now-certain fact that parole has been abolished would eliminate the very speculation that previously concerned the Supreme Court.
In view of the legislature’s abolition of the long standing tradition of parole and the new bifurcated jury sentencing procedure, we mislead jurors and prejudice defendants when we fail to inform jurors that parole is no longer available.
II.
The overriding purpose of jury instructions is to inform the jury of the applicable law. See Cooper v. Commonwealth, 2 Va.App. 497, 500, 345 S.E.2d 775, 777 (1986). To that end, the trial judge must instruct the jury in a manner that will aid the jury in reaching a proper verdict and that will avoid misleading the jury. See id.; see also 75A Am.Jur.2d Trial § 1077 (1991). “[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter.” Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). It is error not to instruct the jury when the jury may make findings based upon a mistaken belief of the law. See Martin v. Commonwealth, 218 Va. 4, 7,235 S.E.2d 304, 305 (1977) (per curiam).
*77 Walker’s proffered instruction was necessary because the unavailability of parole was a relevant factor to consider in determining the proper length of his sentence. The Commonwealth’s attorney argued to the jury the concept of future dangerousness when he asserted:
The defendant’s behavior in this case was more than wrong. It is scary and it is dangerous. It is life threatening. This defendant is dangerous and needs to be kept off the street for a very long time. I am asking you all to consider the facts in this case and sentence him accordingly.
That argument highlights the relevancy of the duration of the sentence that the jury was asked to levy. The unavailability of parole is unquestionably relevant to the jury’s determination of a proper sentence because it reflects the Commonwealth’s policy that the defendant will actually serve a sentence of approximately the same length as the sentence levied by the jury.[15]
As a practical matter, it is well known that “[f]or much of our country’s history, parole was a mainstay of state and federal sentencing regimes, and every term (whether a term of life or a term of years) in practice was understood to be shorter than the stated term.” Simmons v. South Carolina, 512 U.S. 154, 169, 114 S.Ct. 2187, 2197, 129 L.Ed.2d 133 (1994) (plurality opinion). No great leap in logic is required to conclude that because of that history, the jury reasonably could have concluded that Walker’s sentence should be increased beyond the appropriate duration to counteract the effect of his likely early parole release.
*78 Moreover, the jurors were most likely misinformed about the current state of Virginia law on parole eligibility. The abolition of parole in Virginia is a recent change in the law. Indeed, the Virginia Criminal Sentencing Commission, which was created by the General Assembly for the purpose, inter alia, of “[m]onitor[ing] sentencing practices in felony cases ... and maintain[ing] a database containing the information obtained,” Code § 17-235(7), has reported as follows:
Many judges have argued that parole ineligibility information should be provided so that jurors can make more informed sentence decisions. It is felt by some that most jurors are not aware of the impact of the new legislation and may be setting long prison terms in the mistaken belief that only a small portion will actually be served, as occurred under the old parole system.
Va.Crim. Sentencing Comm’n Ann. Rep. 65 (1995) [Hereinafter 1995 Rep.]. The Commission’s 1996 Annual Report notes that “[i]t has been speculated that jurors may not be fully aware of the implications of parole abolition and truth in sentencing and may be inflating their sentences.” Va.Crim. Sentencing Comm’n Ann. Rep. 32 (1996). Similarly, a study, in Texas, a state that also traditionally has had jury sentencing, found that among jurors “almost everyone understood that only rarely would the offender serve the entire sentence.” Robert A Weninger, Jury Sentencing in Noncapital Cases: A Case Study of El Paso County, Texas, 45 Wash. U.J. Urb. & Contemp. L. 3, 13 (1994). In light of the prevalent misconception, the Virginia Criminal Sentencing Commission recommended that the law be changed to allow for “jury instructions on the abolition of parole and the 85% minimum time served requirement for offenders sentenced under the new truth in sentencing system.” 1995 Rep. at 64.
Adding to jurors’ misconception about parole eligibility, under the new sentencing procedures the jury is now given copies of the defendant’s prior record of conviction. See Gilliam v. Commonwealth, 21 Va.App. 519, 465 S.E.2d 592 (1996). Thus, in many instances a jury will have evidence that *79 the defendant was previously released on parole before completing an earlier imposed sentence. See id. at 525-26, 465 S.E.2d at 595 (holding that information regarding the defendant’s prior sentences may be included in the record of conviction submitted to the jury). From this evidence, a jury will likely infer that its sentence may be tempered by early release on parole.
The courts should not permit jurors to sentence based upon the erroneous belief that parole still exists. “The promise of a community judgment about proper punishment is merely an illusion if those acting on behalf of the community do not know what the sentence they impose actually will mean____” Governor’s Comm’n on Parole Abolition & Sentencing Reform, Final Rep. 25 (1994). Indeed, when we give “full recognition [to] the fact that the average juror [believes] ... that some type of further consideration will usually be given to the sentence imposed,” Hinton, 219 Va. at 496, 247 S.E.2d at 706, the imperative to give the jury an easy to understand and legally accurate instruction that parole has been abolished is manifest. The failure to inform the jury in effect ensures that the jury will be misled. “[A] juror with misconceptions about the operation of the parole laws could easily infect the other jurors with these misconceptions and thereby cause the assessment of a sentence [to be] based on erroneous beliefs as to when the defendant will really ‘get out.’ ” Note, Jury Sentencing in Virginia, 53 Va. L.Rev. 968, 984 (1967).
Obviously, if the jury is uncertain about the defendant’s parole eligibility, the jury’s recourse is to impose a lengthier sentence for the purpose of ensuring the defendant actually serves a sentence of the desired duration. To fail to inform the jury that parole has been abolished is to risk “subverting] the will of the legislature by [allowing a jury to impose] a longer sentence than is warranted simply in order to ensure that the defendant’s actual period of confinement corresponds *80 to what [the jury] feels is the defendant’s due.”[16] Id. The prejudice to the defendant is manifest.
I dissent.

. "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.” Morrissey v. Brewer, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972).

. Citing several capital murder cases in which the jury was not instructed on parole before the jury imposed the death penalty, see, e.g., Joseph v. Commonwealth, 249 Va. 78, 83-84, 452 S.E.2d 862, 866, cert. denied, - U.S. -, 116 S.Ct. 204, 133 L.Ed.2d 137 (1995), the concurring opinion posits that the Supreme Court has "consistently applied the well-established principle that information concerning parole eligibility is not relevant.” That analysis ignores the holding in Simmons v. South Carolina, 512 U.S. 154, 171, 114 S.Ct. 2187, 2198, 129 L.Ed.2d 133 (1994), that when future dangerousness is at issue a parole ineligible defendant is entitled as a matter of due process to an instruction on the unavailability of parole in a capital case. Moreover, the Court ruled in Joseph that the defendant was eligible for parole. See 249 Va. at 84, 452 S.E.2d at 866; see also Clagett v. Commonwealth, 252 Va. 79, 94, 472 S.E.2d 263, 272 (1996), cert. denied,-U.S.-, 117 S.Ct. 972, 136 L.Ed.2d 856 (1997) (finding that Clagett, who sought a parole ineligibility instruction for the sentencing of a non-capital charge, failed to prove he was parole ineligible). The other death penalty cases cited in the concurring opinion, King v. Commonwealth, 243 Va. 353, 416 S.E.2d 669 (1992); Eaton v. Commonwealth, 240 Va. 236, 397 S.E.2d 385 (1990); and Williams v. Commonwealth, 234 Va. 168, 360 S.E.2d 361 (1987), were all decided before Simmons. The holding in Simmons now renders the former Virginia rule invalid as to all capital cases where future dangerousness is an issue. Thus, the formerly “well-established principle” has been substantially abrogated by the United States Supreme Court.

. The concurring opinion states that “the arguments now raised for instructing the jury on the abolition of parole were rejected” in Peterson v. Commonwealth, 225 Va. 289, 296-97, 302 S.E.2d 520, 525 (1983). However, the Supreme Court stated that it "need not consider the effect of [the 1982] ... statutoiy amendment” abolishing parole for repeat offenders. Id. at 297, 302 S.E.2d at 525. Moreover, the Court held that Peterson failed to object and the judge correctly declined to raise the issue sua sponte. See id.

. The concurring opinion compares today's bifurcated sentencing scheme, in which parole is undoubtedly unavailable, to the bifurcated capital murder proceedings that pre-dated the new law abolishing parole. It is true that juries are given broad discretion under both schemes. However, the important distinction is that today juries may be exercising their discretion under the misconception that parole is still available. Under the prior capital murder sentence scheme, juries were correct in their belief that parole was available and, thus, were not as likely to abuse their discretion.

. I disagree with the conclusion reached in the concurring opinion that the General Assembly has somehow acquiesced in the court-made rule announced in Hinton. When the General Assembly abolished parole and revised the juty sentencing procedure, the General Assembly ipso facto rendered the Hinton rule a nullity. The rule was judicially created "to preserve, as effectively as possible, the separation of ... [the] functions [of the judicial and executive branches] during the process when the jury is fixing the penalty, in full recognition of the fact that the average juror is aware that some type of further consideration will usually be given to the sentence imposed.” 219 Va. at 496, 247 *76 S.E.2d at 706. Now that the General Assembly has rendered moot the concern about separation of powers, the judiciary has complete power to modify the rule that the judiciary itself created. Changed circumstances and the imperative to avoid misleading juries require judicial action.

. The role and effect of parole on a jury's determination of punishment is demonstrated by the numerous cases cited by the majority in which a jury asked the trial judge for information about parole. See Clagett v. Commonwealth, 252 Va. 79, 94, 472 S.E.2d 263, 272 (1996), cert. denied,-U.S.-, 117 S.Ct. 972, 136 L.Ed.2d 856 (1997); Peterson v. Commonwealth, 225 Va. 289, 296-97, 302 S.E.2d 520, 525 (1983); Hinton v. Commonwealth, 219 Va. 492, 493, 247 S.E.2d 704, 705 (1978); Jones v. Commonwealth, 194 Va. 273, 275, 72 S.E.2d 693, 694 (1952); Coward v. Commonwealth, 164 Va. 639, 642, 178 S.E. 797, 798 (1935); Mosby v. Commonwealth, 24 Va.App. 284, 482 S.E.2d 72 (1997).

. The inescapable conclusion to be drawn from the majority opinion is that a certain degree of jury ignorance can be tolerated. When parole was available, the jury was not instructed on parole issues because parole was not a judicial matter. Furthermore, the harm of jury ignorance was outweighed by compelling concerns about the separation of the judicial and executive functions and the possibility of jury speculation. With the abolition of parole, the reasons for depriving the jury of complete and accurate information about the state of the law no longer exist. With no compelling reason to withhold relevant information from the jury, the majority opinion cites Mosby and merely adopts the ruling of prior Supreme Court cases that were decided in a different statutory context. The effect of so doing is to unnecessarily countenance ignorance in the administration of justice.