*118 JUSTICE KINSER,
dissenting.
In Yarbrough v. Commonwealth, 258 Va. 347, 519 S.E.2d 602 (1999), this Court acknowledged that “it has long been held in this Commonwealth that it is error for the trial court to instruct the jury that the defendant would be eligible for parole or could benefit from an executive act of pardon or clemency.” Id. at 369, 519 S.E.2d at 613 (citing Hinton v. Commonwealth, 219 Va. 492, 496, 247 S.E.2d 704, 706 (1978); Jones v. Commonwealth, 194 Va. 273, 279, 72 S.E.2d 693, 696-97 (1952); Coward v. Commonwealth, 164 Va. 639, 646, 178 S.E. 797, 799 (1935)). The policy underlying that rule is twofold. First, a “jury should not be permitted to speculate on the potential effect of parole, pardon, or an act of clemency on its sentence because doing so would inevitably prejudice the jury in favor of a harsher sentence than the facts of the case might otherwise warrant.” Yarbrough, 258 Va. at 372, 519 S.E.2d at 615. Equally important is the separation of powers between the judicial and executive branches of government. In our criminal justice system, the judicial branch of government assesses punishment, and the executive branch administers that punishment. See Hinton, 219 Va. at 496, 247 S.E.2d at 706. “The aim of the rule followed in Virginia is to preserve, as effectively as possible, the separation of those functions during the process when the jury is fixing the penalty . ...” Id.
However, in Yarbrough, we created an exception to that rule in capital murder cases because, with the abolition of parole in Virginia, see Code § 53.1-165.1, and the unavailability of geriatric release, see Code § 53.1-40.01, “[t]he Coward rule simply does not address [the] unique situation” presented to a jury when it must elect between imposing the death penalty or a sentence of life. Yarbrough, 258 Va. at 372, 519 S.E.2d at 615. There, we said that “this unique situation arises from the fact that a defendant sentenced to life imprisonment for capital murder, a class one felony, is not subject to ‘geriatric parole.’ ” Id. Thus, in capital murder cases, under the rule announced in Yarbrough, there is no danger that the judicial branch will exceed its role in assessing punishment by taking into account matters within the province of the executive branch.
Today, the majority extends the exception recognized in Yarbrough to non-capital felony cases even though in such cases, the executive branch, in administering the sentence, continues to have available certain forms of sentence reduction, such as earned sentence credits, see Code §§ 202.2 through -202.4, and geriatric release. *119 Because I believe that the majority’s decision will blur the lines between the judicial branch of government and the executive branch, see Va. Const, art. I, § 5, I respectfully dissent.
The majority recognizes that it would be unfair to the Commonwealth to instruct a jury that parole is no longer available in Virginia without also, in appropriate cases, advising the jury about geriatric release. However, the majority also states its view that the jury should not be instructed about executive clemency, see Code §§53.1-229 through -231, or earned sentence credits. While the majority’s view on the propriety of instructing the jury about earned sentence credits or executive clemency comports with the doctrine of stare decisis in that it follows our long-standing precedent, see Hinton, 219 Va. at 495, 247 S.E.2d at 706, Coward, 164 Va. at 646, 178 S.E. at 799, precedent that the majority overrules today in other respects, the majority reaches its decision not by adhering to our prior decisions, which were well-grounded in public policy, but rather by distinguishing between what it considers to be the speculative nature of various types of sentence reduction available to the executive branch.
Claiming to find geriatric release and earned sentence credits “distinctively different,” the majority posits that, because the eligibility of a prisoner to petition the Parole Board for conditional geriatric release can be easily calculated, a jury’s knowledge of geriatric release would not lead to speculation by it in determining an appropriate sentence. However, in making this distinction, the majority fails to recognize that the availability of geriatric release and the award of earned sentence credits both involve the discretion of the executive branch.
An examination of the statutes creating geriatric release and earned sentence credits indicates that consideration of either one by a jury in its sentencing decision would involve speculation. The statute authorizing geriatric release provides that a prisoner may petition the Parole Board for such release. However, the statute does not mandate release when a prisoner reaches age 65 and has served 5 years, or age 60 and has served 10 years, but authorizes the Parole Board to promulgate regulations to implement the provisions of that statute. Code § 53.1-40.01.[1] Likewise, the executive branch is given discretion in fashioning standards under which prisoners can qualify for *120 earned sentence credits. Code § 53.1-202.4. In fact, the very same “unpredictable conduct of a prisoner, and . . . subjective assessment of that conduct . . . with regard to compliance with rules and participation in various programs ^ established and administered by the Board of Corrections,” which the majority contends renders the earned sentence credit program too speculative to tell the jury about, is similar to the inquiry that the Parole Board must conduct before it can discharge any inmate on geriatric release. Virginia Parole Board, Virginia Parole Board Administrative Procedures Manual No. 1.226 (effective Nov. 14, 1995) (Parole Board uses same criteria for determining prisoner’s suitability for geriatric release as it does “for assessing offenders eligible for parole consideration”).[2]
If “truth in sentencing” is a goal of our system of justice, it seems that, if a jury is told anything about the availability or unavailability of parole or geriatric release, it should also be instructed about earned sentence credits and any other matter that could affect the amount of time that a defendant may actually serve.[3] Otherwise, a jury will be receiving a “half-truth,” and the Commonwealth will be prejudiced because a jury could believe that a defendant will serve all of a sentence imposed when, in fact, that is not always what happens in a non-capital felony case.[4]
However, if a jury receives all relevant information so that neither a defendant nor the Commonwealth is prejudiced, I fear that juries may become confused, will speculate on the effect of any applicable sentence reduction methods available to the executive branch, and perhaps will resort to the use of a calculator in attempting to fashion an appropriate sentence. We have previously noted that “the average juror is aware that some type of further consideration *121 will usually be given to the sentence imposed,” Hinton, 219 Va. at 496, 247 S.E.2d at 706, but have warned against encouraging speculation by a jury. “[I]f it is thought necessary to tell the jury not to speculate about the information given, it is safer not to give the information at all.” Jones, 194 Va. at 278, 72 S.E.2d at 696.
I also believe that if a jury is advised about all the factors that might impact the amount of time that a defendant actually serves, the jury will, in essence, be considering factors outside its control, and in doing so, will not only be intruding upon the discretion afforded to the executive branch in administering sentences,[5] but also nullifying the legislative goal underlying earned sentence credits and other forms of sentence reduction. A jury “should not fix a defendant’s punishment with the view of preventing the operation of laws that have been duly enacted for the handling of a prisoner after sentence in a way considered by the lawmakers to be in the best interests of the public and of the prisoner.” Id. at 279, 72 S.E.2d at 696.
Furthermore, this Court has already partially addressed the question before us. In Peterson v. Commonwealth, 225 Va. 289, 302 S.E.2d 520, cert. denied, 464 U.S. 865 (1983), the jury asked whether it was possible “to give a life sentence without parole.” Id. at 296, 302 S.E.2d at 525. In response, the trial court advised that jury that its responsibility was to impose such sentence as it deemed just and that it was not to concern itself with what may thereafter happen. Id. at 296-97, 302 S.E.2d at 525. The defendant in that case, who was charged with capital murder in the commission of armed robbery and had two previous convictions for armed robbery, did not object to the court’s answer. However, he argued before this Court that Code § 53.1-151(B1), which became effective July 1, 1982, and made a person convicted of three separate offenses of armed robbery ineligible for parole, changed the rule addressed in Hinton. We did not consider the effect of that statutory amendment but reaffirmed “the principle . . . that it is improper to inform the jury as to the possibility of parole.” Peterson, at 297, 302 S.E.2d at 525. We further stated that “it would have been improper for the trial court sua sponte to have offered a jury instruction based upon the 1982 amendment, even if, as [the defendant] now contends, the amendment applied to him” and rendered him parole ineligible. Id.
*122 Thus, I believe that the rule enunciated in Coward and consistently followed until today in non-capital felony cases remains viable and should not be discarded. The rule preserves our system of government premised on the separation of powers between the branches of government and also takes into account practical considerations about how much information a jury should receive regarding sentencing while still maintaining fairness to both the defendant and the Commonwealth.
For these reasons, I dissent and would affirm the judgment of the Court of Appeals.

 The Parole Board has not promulgated those regulations to date, although it has issued manuals that contain rules implementing the provisions of Code § 53.1-40.01. See Virginia Parole Board, Virginia Parole Board Policy Manual (July 1997); Virginia Parole Board, Vir *120 ginia Parole Board Administrative Procedures Manual Nos. 1.218 (revised May 21, 1996) and 1.226 (effective Nov. 14, 1995).

 Among those criteria are “[w]hether the individual’s history, physical and mental condition and character, and the individual’s conduct . . . reflect the probability that the individual will lead a law-abiding life . . .,” as well as an evaluation of the individual’s “[g]eneral [adjustment” to the institutional experience, including the individual’s behavior and relationships with the prison staff and other inmates. Virginia Parole Board, Virginia Parole Board Policy Manual 2-3 (July 1997). See also Code § 53.1-155(A).

 I do not mean to suggest that a jury should be told about the power of the trial court and this Court to set aside a jury’s sentence. See Frye v. Commonwealth, 231 Va. 370, 395-96, 345 S.E.2d 267, 284-85 (1986).

 Our prior cases have indicated a policy favoring a fully informed jury, Yarbrough, 258 Va. at 373, 519 S.E.2d at 616, Jones, 194 Va. at 278, 283, 72 S.E.2d at 696, 698 (majority, Spratley, J. concurring), although at least one of those cases has recognized that such a goal may be superseded by other concerns, Jones, 194 Va. at 279, 72 S.E.2d at 697.

 The doctrine of “separation of powers” prevents such an intrusion, as the executive and judicial branches are to be kept as separate and apart as possible. Winchester & Strasburg R.R. Co. v. Commonwealth, 106 Va. 264, 270, 55 S.E. 692, 694 (1906).