COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Annunziata and Overton
Argued at Richmond, Virginia


ROBERT MACK WALKER
                                            OPINION BY
v.        Record No. 2948-95-2        JUDGE NELSON T. OVERTON
                                            JUNE 17, 1997
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      James B. Wilkinson, Judge

             Patricia P. Nagel, Assistant Public Defender
             (David J. Johnson, Public Defender, on
             brief), for appellant.

             Eugene Murphy, Assistant Attorney General
             (James S. Gilmore, III, Attorney General, on
             brief), for appellee.



     Robert Mack Walker was convicted by a jury of forgery,

uttering, grand larceny, and two counts of robbery.  He appeals,

claiming that (1) the evidence is insufficient to support the

convictions for forgery, uttering, grand larceny, and robbery;

and (2) he should have been granted a proffered instruction

informing the jury that parole has been abolished in Virginia.

                            I.  Facts

     On August 7, 1995, just before midnight, Mary Person and her

aunt were stopped at a Race Trac Gas Station off Midlothian

Turnpike in southside Richmond.  When Person was getting back

into her car and about to shut the door, the door flew open.  A

man later identified by Person as Robert Mack Walker threw his

shoulder into hers and pushed her over.  Walker drew a knife and

put it in Person's side and asked for all of her money.  Person

threw her pocketbook and her aunt's pocketbook at Walker. When another motorist drove up, Walker fled with Person's wallet.

The next day Walker presented two of the checks stolen from Person's purse to two tellers at separate First Virginia Bank branches. For the first he received $300; the other was refused. He was subsequently indicted for two counts of forgery, two counts of uttering, one count of grand larceny, and two counts of robbery.

At trial, Person testified that her checkbook had been in her wallet. She identified checks numbered 525 and 526 as coming from the stolen checkbook, and she stated that the signature on the checks was not hers. Person later identified Walker from a photospread.

Lisa Cooper, a teller at First Virginia Bank, testified that she handled check 526 on August 8, 1995, the day after the robbery, made out to Robert Walker. She identified the teller stamp and her handwriting on the back. She testified that the identification card she examined bore the photograph of the same man who cashed the check. The information that she copied from the identification card matched the personal information from Walker's identification card. Six photos from the bank's security camera corroborated Walker's presence at the bank at the time.

James Carter, a teller at another First Virginia Branch, also testified that Walker gave him a check on August 8, 1995.

He copied Walker's personal information from Walker's identification onto the back of the check. He also checked whether the person presenting the check was the same person as the identification card represented. When Carter was handed the check to identify at trial, both he and the Commonwealth's attorney called it check 526, the same number as the check that Cooper had identified. Both checks 525 and 526 were admitted into evidence.

Walker testified on his own behalf. He stated that he had been at the gas station at approximately the time of the robbery. He also admitted receiving one of the checks from an acquaintance on August 8, 1995. Walker testified that he had done some painting for a woman named Elaine, and he thought the check was in return for that work, the E. in Mary E. Person standing for Elaine. He took the check to the first bank and cashed it. He denied receiving the second check and denied ever going to the second branch.

At the close of the Commonwealth's evidence, defendant moved to strike because of the discrepancy in the check numbers. Defendant argued that check 526 was identified by both tellers as the check they handled. The court agreed that the Commonwealth's attorney handed one of the witnesses the wrong check, but overruled the motion to strike. The defendant renewed his motion at the close of all evidence and was again overruled. The jury found the defendant guilty on all counts.

3

Before the jury deliberated on sentencing, the defendant offered a jury instruction stating that the Commonwealth of Virginia has abolished parole for all felonies that were committed after January 1, 1995. The judge ruled that, because this was not a capital murder case, he was refusing the instruction. The jury fixed Walker's sentence at ten years for each robbery count, two years for each forgery count, six months on each uttering count, and one year for the grand larceny.

At the sentencing, Walker rearticulated the argument for the previous motion to strike and moved to set aside the verdict. He argued that both tellers identified the same check and that therefore all the convictions should be set aside. The judge agreed that evidence was lacking on one check, although he was not sure which. He refused to set aside the convictions on both checks, stating that "one of them was obvious" and that the Commonwealth merely "made a mistake on the check and gave the witness the wrong check." He did set aside the forgery and uttering convictions on check number 526.

## II. Sufficiency of the Evidence

### A.

We hold that the evidence is sufficient to support the convictions for forgery, uttering, and grand larceny. "Larceny is defined as the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof

4

permanently." Jones v. Commonwealth, 3 Va. App. 295, 300, 349 S.E.2d 414, 417 (1986). If the goods are valued at $200 or more, the offense is grand larceny. See Code § 18.2-95. Walker admitted receiving $300 from the bank in return for one of the forged checks. The evidence is sufficient for a jury to conclude that Walker fraudulently induced the bank to give him this money and that he did not intend to return it. All of the elements of grand larceny having been established, we affirm this conviction.

All of the elements of forgery are also established. "Forgery is the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability." Moore v. Commonwealth, 207 Va. 838, 841, 153 S.E.2d 231, 233 (1967); Bullock v. Commonwealth, 205 Va. 558, 561, 138 S.E.2d 261, 263 (1964). Person testified that the signature on the checks was not her own. By presenting the checks to the bank tellers, Walker demonstrated a clear intent to defraud. The checks were therefore forged. The evidence does not prove conclusively that Walker himself signed Person's name on the checks, but such proof is not required. "Possession of a forged check by an accused, which he claims as a payee, is prima facie evidence that he either forged the instrument or procured it to be forged." Fitzgerald v. Commonwealth, 227 Va. 171, 174, 313 S.E.2d 394, 395 (1984). Walker admitted the possession of one of the two forged checks in evidence, whether number 525 or number 526. The jury

5

was therefore entitled to believe beyond a reasonable doubt that Walker either forged the check or procured it to be forged. The record supports a conviction for forgery.

Uttering is an offense separate from forgery. See Bateman v. Commonwealth, 205 Va. 595, 599, 139 S.E.2d 102, 105 (1964); Johnson v. Commonwealth, 102 Va. 927, 929, 46 S.E. 789, 790 (1904). "The word 'utter' is defined in Black's Law Dictionary, 4th ed., page 1716, as meaning 'To put or send [as a forged check] into circulation. * * * to utter and publish.' It is an assertion by word or action that a writing known to be forged is good and valid." Bateman, 205 Va. at 599-600, 139 S.E.2d at 106 (alteration in original). Walker's possession of the forged check allows the inference that Walker knew it to be forged. Walker clearly put this forged check into circulation, as evidenced by, inter alia, his presence at the bank captured on a bank security camera and his own admission. The fact that the two check numbers were confused at trial does not alter this fact. The conviction for uttering is affirmed.

B.

Walker attacks his robbery convictions on the ground that Person's identification was incredible. Person's testimony is clearly not incredible. She chose him from a lineup, and her identification was later verified by the fact that Walker admitted his presence at the gas station and was found in possession of her checks the next morning. The credibility of

6

the witness and the weight accorded her testimony "are matters solely for the fact finder, who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995); see Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736–37 (1985).

Furthermore, sufficient evidence was present to prove that Walker was the robber, even without the eyewitness identification. The jury rejected the defendant's explanation for his possession of the check, and in doing so inferred his consciousness of guilt from that lie. See Welch v. Commonwealth, 15 Va. App. 518, 525, 425 S.E.2d 101, 106 (1992). "A defendant's false statements are probative to show he is trying to conceal his guilt, and thus is evidence of his guilt." Rollston v. Commonwealth, 11 Va. App. 535, 548, 399 S.E.2d 823, 831 (1991) (citing Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982)). Accordingly, the robbery convictions are affirmed.

III. Jury Instruction

Walker next argues that the trial judge erred by refusing an instruction informing the jury that Walker was ineligible for parole under Virginia law. The proffered instruction read:

> The Commonwealth of Virginia has abolished
> parole for all felonies that were committed
> after January 1, 1995.[1]

---

[1]We note that this instruction is not entirely accurate as a matter of law. Exceptions to this general statement exist in the Code. See, e.g., Code § 19.2-311 (granting a discretionary exception for persons between the age of eighteen and twenty-one

7

The trial judge ruled that because this was not a capital case, he would not instruct the jury about parole considerations, adding, "It is none of their business."

A.

Virginia has a long and honored system of jury sentencing. Juries have been empowered to sentence their peers in the Commonwealth from as early as 1776. See 9 Laws of Va. 170 (Hening 1821); see also Note, Jury Sentencing in Virginia, 53 Va. L. Rev. 968, 971 (1967). This phenomenon did not arise by accident; the General Assembly made a conscious decision to depart from the common law, under which the court sentenced the defendant. See Mackaboy v. Commonwealth, 4 Va. (2 Va. Cas.) 268, 271 (1821) (noting that the statute in question was copied from an older law, "with this difference only, that by our Law the fine as assessed by the jury, and under the English Laws, by the Justices"). Our tradition continues today. Only seven other states allow the jury to sentence offenders in noncapital cases. See Ark. Code Ann. §§ 5-4-103, 16-90-107 (WESTLAW through 1995 Sess.); Ky. Rev. Stat. Ann. § 532.055(2) (West, WESTLAW through 1996 Reg. Sess.); Miss. Code Ann. §§ 97-3-67, 97-3-71 (WESTLAW through 1996 Reg. Sess.) (limited powers); Mo. Ann. Stat. § 557.036 (Vernon, WESTLAW through 1996 2d Reg. Sess.) (limited powers); Okla. Stat. Ann. tit. 22, §§ 926-928 (West, WESTLAW

convicted of a felony not punishable as a Class 1 felony); Code § 53.1-40.01 (allowing petitions for parole from older prisoners convicted of a felony other than a Class 1 felony).

8

through 1996 2d Reg. Sess.); Tenn. Code Ann. §§ 40-20-104,

40-20-107 (WESTLAW through 1996 2d Reg. Sess.); Tex. Code Crim.

Proc. Ann. art 37.07 (West, WESTLAW through 1995 Reg. Sess.).

When juries set sentences, they may consider certain

information.  The Supreme Court of Virginia definitively set

forth the rule over sixty years ago:

> These jurors should have been told that it
> was their duty, if they found the accused
> guilty, to impose such sentence as seemed to
> them to be just.  What might afterwards
> happen was no concern of theirs.

Coward v. Commonwealth, 164 Va. 639, 646, 178 S.E. 797, 800

(1935).  Over time the Court has reiterated Virginia's commitment

to this principle, even while recognizing that other

jurisdictions may not agree.  See Hinton v. Commonwealth, 219 Va.

492, 495, 247 S.E.2d 704, 706 (1978) (noting the existence of

contrary cases).  As the Supreme Court has stated, the correct

response when the jury asks about parole is:

> The only response I can give you on that
> . . . is that it's the function of the jury,
> duty of the jury, to impose such sentence as
> they consider just under the evidence and the
> instructions of the Court.
> And you should not concern yourself with
> what may thereafter happen.

Peterson v. Commonwealth, 225 Va. 289, 296-97, 302 S.E.2d 520,

525 (1983); see also Clagett v. Commonwealth, 252 Va. 79, 94, 472

S.E.2d 263, 272 (1996); Wansley v. Commonwealth, 205 Va. 412,

416, 137 S.E.2d 865, 868 (1964); Jones v. Commonwealth, 194 Va.

273, 274, 72 S.E.2d 693, 694 (1952); Virginia Model Jury

9

Instruction I-25.  Our long line of precedents has led this Court to remark that "[i]t is well-established in Virginia that a jury is not to concern itself with post-sentencing events."  Kitze v. Commonwealth, 15 Va. App. 254, 260, 422 S.E.2d 601, 605 (1992), rev'd on other grounds, 246 Va. 283, 435 S.E.2d 583 (1993) (agreeing that the jury has no right to be advised of post-sentencing events); see also Mosby v. Commonwealth, 24 Va. App. 284, 482 S.E.2d 72 (1997).

The principal rationale underlying our system of sentencing is founded in the basic concept of separation of the branches of government.  The assessment of punishment lies within the purview of the judicial branch; the administration of such punishment within that of the executive branch.  The rule in Virginia aims to preserve, as effectively as possible, the separation of these functions.  See Hinton, 219 Va. at 496, 247 S.E.2d at 706; Coward, 164 Va. at 646, 178 S.E. at 799-800; Dingus v. Commonwealth, 153 Va. 846, 852, 149 S.E. 414, 415 (1929).  The jury's duty is to sentence the defendant according to the evidence in the trial and within the limits set by the General Assembly for the crimes committed.  Pardons, parole, credit for good behavior, and the like are factors outside of the scope, and certainly the control, of the jury.  Consideration of these possibilities should not hamper the jury's ability to perform its duty.

Other secondary reasons have been advanced to support

10

Virginia's policy. In Fitzgerald v. Commonwealth, 249 Va. 299, 455 S.E.2d 506 (1995), cert. denied, 116 S. Ct. 1279 (1996), the Supreme Court of Virginia affirmed the refusal of a jury instruction which stated:

> The court instructs the jury that under Virginia law any person convicted of three separate felony offenses of murder, rape or robbery by the presenting of firearms or other deadly weapon or any combination of the offenses of murder, rape or robbery when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole.

Id. at 305, 455 S.E.2d at 510. The Court found that, were the jury to consider this instruction, it would be determining law rather than fact, thus invading the realm of the judge. "The question whether an accused is parole eligible in Virginia is a question of law that may not be considered by a jury." Id. at 306, 455 S.E.2d at 510.

On a more practical level, consideration of post-sentencing events would lead the jury to speculate as to the probable time actually served on a sentence. To inform the jury that credit for good behavior exists may invite the jury to attempt to compensate for the credit, resulting in a sentence longer than the jury intended to impose. See Coward, 164 Va. at 642, 178 S.E. at 798. Similarly, if the jury is informed of credit for good behavior, to be fair it should also be informed of the workings of the parole system, the possibility of pardons, work-release programs, commitments to the Department of Mental

11

Health, and every other alternative method which may affect the amount of time the defendant may actually be confined.  This sheer volume of information would pose a tremendous obstacle to efficient and just jury sentencing.

B.

In the instant case, Walker asserts that <u>Simmons v. South Carolina</u>, 512 U.S. 154, 114 S. Ct. 2187 (1994), requires the judge to grant an instruction informing the jury that the defendant is not eligible for parole.  The constitutional requirements of <u>Simmons</u> do not apply to noncapital felony cases.  See <u>Mosby</u>, 24 Va. App. at 290, 482 S.E.2d at 74.  Instead, the general rule governs.  A state may make its own determination about what a jury will or will not be told about sentencing.  <u>See</u> <u>California v. Ramos</u>, 463 U.S. 992, 1014 (1983).  "[T]he wisdom of the decision to permit juror consideration of [post-sentencing events] is best left to the States."  <u>Id.</u>; <u>see</u> <u>Simmons</u>, 512 U.S. at 183, 114 S. Ct. at 2204 (Scalia, J., dissenting).

> Code § 19.2-295.1 provides, in pertinent part:
> In cases of trial by jury, upon a finding that the defendant is guilty of a felony, a separate proceeding limited to the ascertainment of punishment shall be held as soon as practicable before the same jury. . . .  After the Commonwealth has introduced such evidence of prior convictions, or if no such evidence is introduced, the defendant may introduce relevant, admissible evidence related to punishment.

The question before us today is whether parole eligibility is "relevant to punishment."  In the past, the Supreme Court of

12

Virginia has made it abundantly clear that it is not. "Information regarding parole eligibility is not relevant evidence to be considered by the jury." Eaton v. Commonwealth, 240 Va. 236, 248, 397 S.E.2d 385, 392 (1990) (citing Spencer v. Commonwealth, 240 Va. 78, 85, 393 S.E.2d 609, 613 (1990)); see Watkins v. Commonwealth, 238 Va. 341, 351, 385 S.E.2d 50, 56 (1989); Williams v. Commonwealth, 234 Va. 168, 178-80, 360 S.E.2d 361, 367-68 (1987); Poyner v. Commonwealth, 229 Va. 401, 418-19, 329 S.E.2d 815, 828 (1985).

Walker argues that because the General Assembly has now abolished parole for all persons convicted of felonies committed after January 1, 1995, that fact has become relevant to punishment. We disagree.

We doubt not that the jury's beliefs about parole may influence, in some cases, a jury's decision on the length of the sentence, although Walker does not argue this theory on brief and we can find no empirical evidence to support it.[2] Merely because a fact may influence a jury's decision, however, does not render it relevant within the meaning of the statute.

Our Supreme Court has found that the jury may consider

---

[2] See generally Virginia Criminal Sentencing Commission 1996 Annual Report 32 (1996) (noting that "[i]t has been speculated that juries may not be fully aware of the implications of parole abolition and truth in sentencing and may be inflating their sentences"); Robert A. Weninger, Jury Sentencing in Noncapital Cases: A Case Study of El Paso County, Texas, 45 J. Urb. & Contemp. L. 3, 13 (1994) (asserting without support that "almost everyone understood that only rarely would the offender serve the entire sentence").

13

"evidence in mitigation of the offense relevant to the defendant's past record and the nature of his conduct in committing the crime." Coppola v. Commonwealth, 220 Va. 243, 254, 257 S.E.2d 797, 805 (1979); see Sheppard v. Commonwealth, 250 Va. 379, 391, 464 S.E.2d 131, 138 (1995). Additionally, victim impact statements are also relevant to punishment, at least in capital sentencings. See Weeks v. Commonwealth, 248 Va. 460, 476, 450 S.E.2d 379, 389 (1994). The specific harm caused by the defendant is probative of "'the defendant's moral culpability and blameworthiness.'" Weeks, 248 Va. at 476, 450 S.E.2d at 390 (quoting Payne v. Tennessee, 501 U.S. 808, 835 (1991)). These factors are relevant to punishment because they concern the defendant himself, the nature of the offense, and the effects of his offense. See Mosby, 24 Va. App. at 292, 482 S.E.2d at 75.

In contrast, the Virginia Supreme Court has also ruled on several types of information not relevant to punishment. "Evidence as to the result of another defendant's trial for the same crime is irrelevant to the determination by the jury of the appropriate punishment for the defendant whose sentence is being weighed." Coppola, 220 Va. at 254, 257 S.E.2d at 805; Sheppard, 250 Va. at 390-91; 464 S.E.2d at 138. Under the mandated statutory review of capital cases, the Supreme Court must compare the sentence in a particular case to similar cases, but a jury has no such responsibility. See id. The Supreme Court has also

14

held that a jury should not consider "residual doubt" about guilt while sentencing, see Stockton v. Commonwealth, 241 Va. 192, 211, 402 S.E.2d 196, 207 (1991), nor the possibility that later-discovered evidence may demonstrate the innocence of the defendant.  See Frye v. Commonwealth, 231 Va. 370, 393, 345 S.E.2d 267, 283 (1986).  All of these factors might tend to influence a jury's decision as to the amount of confinement, but they are not "relevant to punishment."

Relevant factors concern the defendant's character — his past record and moral culpability at time of the offense — and the offense itself — the nature of the defendant's behavior and the impact on the victim.  Those not relevant to sentencing concern independent events occurring after the offense — a codefendant's trial, residual doubt by the jury, or the possibility of new evidence.  These factors involve matters over which the defendant has no control and for which he has no blame.  Whether or not the defendant is eligible for parole falls squarely within the second category.  This rationale is further supported by the fact that all convicted felons are now parole-ineligible:  that status now has absolutely no dependence on a particular defendant's character or culpability.

We are not persuaded by the argument that the jury will impose a more severe sentence under the false belief that parole exists.  A jury is charged to fix a sentence within the statutory range, commensurate with the nature of the offense.  We shall not

15

presume that our juries routinely disobey this charge by speculating as to parole possibilities.[3]

We note that an instruction informing the jury that parole has been abolished may mislead the jury into thinking that the defendant will serve all of the time it imposes; under the Code a convicted felon is still entitled to accumulate credit for good behavior. See Code § 53.1-202.3.[4]  Additionally, because parole has not been absolutely abolished, see note 1, supra, the jury would have to make a legal determination that this defendant is in fact ineligible for parole:  a role reserved for the judge. See Fitzgerald v. Commonwealth, 249 Va. 299, 306, 455 S.E.2d 506, 510 (1995), cert. denied, 116 S. Ct. 1279 (1996).  Finally, the trial judge, who is aware of the parole laws, has the power to modify any jury sentence, within statutory limits.  A defendant given an extraordinarily harsh sentence, therefore, has recourse. "[U]nder the Virginia practice, the punishment as fixed by the jury is not final or absolute, since its finding on the proper punishment is subject to suspension by the trial judge, in whole

[3]The jury in this case was instructed to sentence Walker to life imprisonment or a period of not less than five years on each of the two robbery charges.  The jury fixed the sentence at ten years for each charge, leading the trial judge to comment, when asked to reduce the sentence, "I really don't see where the verdicts are out of line, probably more accurate than the sentencing guidelines."

[4]The Code allows a prisoner convicted of a felony committed after January 1, 1995, to earn a maximum credit of four and one-half days for each thirty days served.  Therefore, a prisoner has the potential to serve only 85% of his time, or eight and one-half years out of every ten sentenced.

16

or in part, on the basis of any mitigating facts that the convicted defendant can marshal." Vines v. Muncy, 553 F.2d 342, 349 (4th Cir. 1977). While judges in the Commonwealth typically respect the jury's recommendation, modification of a jury's sentence is not uncommon.[5]

Juries in Virginia are neither required nor entitled to consider parole eligibility, either by the federal Constitution or the law extant in the Commonwealth. This rule is based on the separation between the branches of government as well as compelling practical considerations. The recent amendment to the parole laws does not require us to depart from the rule. We find that Walker was not entitled to his requested instruction.

For the reasons stated, we affirm the convictions.

Affirmed.

---

[5]In 1996, judges modified 20% of the total number of jury sentences reported to the Virginia Criminal Sentencing Commission. See Annual Report at 34.

17

Annunziata, J., concurring.

The disposition of this appeal is governed by the recent decision of a panel of this Court in Mosby v. Commonwealth, 24 Va. App. 284, 482 S.E.2d 72 (1997).  I write to address further the issue whether the abolition of parole in Virginia for all felony offenses, under Code § 53.1-165.1, is "relevant . . . evidence related to punishment" in a bifurcated sentencing proceeding under Code § 19.2-295.1.

Under the former unitary trial procedure, before the abolition of parole for all felony offenses, the principle was well established that "the trial court should not inform the jury that its sentence, once imposed and confirmed, may be set aside or reduced by some other arm of the State."  Hinton v. Commonwealth, 219 Va. 492, 495, 247 S.E.2d 704, 706 (1978).  Both appellant and the dissent argue that the General Assembly ipso facto rendered this principle a nullity by making "fundamental changes" in felony sentencing procedures, viz., by bifurcating the guilt and sentencing aspects of trial, and by abolishing parole for all felony offenses.  I find their position unsupported either in controlling case precedent or by the acts of the General Assembly.

The bifurcated felony trial was not unknown in the Commonwealth prior to the enactment of Code § 19.2-295.1.  Such was, and continues to be, the trial procedure in the prosecution of capital murder offenses.  Gilliam v. Commonwealth, 21 Va. App.

18

519, 523, 465 S.E.2d 592, 594 (1996). In the context of bifurcated capital murder trials conducted prior to the enactment of Code § 19.2-295.1, the Supreme Court consistently applied the well established principle that information concerning parole eligibility is not relevant evidence to be considered by the jury. See Eaton v. Commonwealth, 240 Va. 236, 248, 397 S.E.2d 385, 392 (1990), cert. denied, 502 U.S. 824 (1991) ("Information concerning parole eligibility is not relevant evidence to be considered by the jury."); King v. Commonwealth, 243 Va. 353, 368, 416 S.E.2d 669, 677, cert. denied, 506 U.S. 957 (1992).

When enacting Code § 19.2-295.1, the General Assembly did not identify the specific evidence related to punishment that it considered "relevant" for the jury's consideration during the sentencing phase of a bifurcated felony trial. Pursuant to established principles of statutory construction, however, this Court has repeatedly interpreted the legislature's decision to expand the bifurcated trial procedure to all felony jury trials in light of the principles developed in the context of capital murder trials. See Gilliam, 21 Va. App. at 522-23, 465 S.E.2d at 594; Bunn v. Commonwealth, 21 Va. App. 593, 598, 466 S.E.2d 744, 746 (1996). Applying the same principles here, the conclusion follows that evidence regarding parole is not relevant evidence related to punishment under Code § 19.2-295.1.

Both appellant and the dissent argue that such analysis is no longer controlling in light of the United States Supreme

19

Court's decision in Simmons v. South Carolina, 512 U.S. 154, 114 S. Ct. 2187 (1994), which "substantially abrogated" the principle that information concerning parole is not relevant evidence related to punishment in capital cases. Simmons, however, has no bearing on the question whether the General Assembly's extension of the bifurcated sentencing proceeding from capital trials to all felony trials requires that the jury be provided information concerning parole. The rule of Simmons is "that where the State puts the defendant's future dangerousness in issue, and the only available alternative sentence to death is life imprisonment without parole, due process entitles the defendant to inform the capital sentencing jury . . . that he is parole ineligible." Mueller v. Murray, 252 Va. 356, 362, 478 S.E.2d 542, 546-47 (1996). The due process rationale of Simmons applies only when each of the following predicates is met, viz., (1) future dangerousness is at issue; (2) the jury is faced with a choice between death and life imprisonment; and (3) the defendant is, in fact, parole ineligible. See Roach v. Commonwealth, 251 Va. 324, 346, 468 S.E.2d 98, 111, cert. denied, __ U.S. __, 117 S. Ct. 365 (1996); Mosby, 24 Va. App. at 290, 482 S.E.2d at 74. Where the aforementioned predicates are met, parole ineligibility is relevant for the jury's consideration: the issue is whether a defendant who will never be released from incarceration actually poses a future danger to society.[6] It simply does not follow,

_____

[6]While future dangerousness was arguably at issue in the

20

however, that parole ineligibility is relevant for the jury's consideration in every case simply because a bifurcated sentencing proceeding is undertaken.[7]

Moreover, the enactment of Code § 53.1-165.1 is not the first act of the General Assembly to abolish parole in Virginia. In July 1982, the General Assembly abolished parole for three-time felony offenders. See Code § 53.1-151(B)(1). In that context, the arguments now raised for instructing the jury on the abolition of parole were rejected. See Peterson v. Commonwealth, 225 Va. 289, 296-97, 302 S.E.2d 520, 525, cert. denied, 464 U.S. 865 (1983); Williams v. Commonwealth, 234 Va. 168, 178-80, 360

present case, Simmons does not apply here because the jury was not faced with a choice between death and life imprisonment. See Mosby, 24 Va. App. at 290, 482 S.E.2d at 74.

[7]Indeed, the rationale of Simmons would not obtain even in a capital sentencing proceeding where a sentence of death was predicated on "vileness" rather than "future dangerousness," notwithstanding the bifurcated nature of the proceeding and the fact that the defendant was parole ineligible. See Cardwell v. Commonwealth, 248 Va. 501, 515, 450 S.E.2d 146, 155 (1994), cert. denied, __ U.S. __, 115 S. Ct. 1826 (1995) (suggesting Simmons not applicable where punishment fixed upon "vileness" predicate). The fact of parole ineligibility bears no relation to the vileness of the crime.

S.E.2d 361, 368 (1987), <u>cert. denied</u>, 484 U.S. 1020 (1988).[8]

<u>Peterson</u> compels the conclusion that there is no basis for finding that, by abolishing parole for all convicted felons, the General Assembly intended to override the principle enunciated time and again by the Virginia Supreme Court that information concerning parole eligibility or ineligibility is not relevant for the jury's consideration.

The United States Supreme Court's decision in <u>Simmons</u> does

---

[8]In <u>Peterson</u>, the Supreme Court of Virginia considered two questions. First, the propriety of an instruction similar to the one at issue in this case given in response to a jury question regarding parole eligibility and, second, whether the legislature's amendment to Code § 53.1-151(B)(1), which made a person convicted of three separate offenses of armed robbery ineligible for parole, required an instruction to that effect. Turning aside the failure of Peterson to object when the trial court declined to instruct the jury about his parole ineligibility and gave instead the instruction approved in

<u>Clanton v. Commonwealth</u>, 223 Va. 41, 54-55, 286 S.E.2d 172, 179-80 (1980), and <u>Hinton v. Commonwealth</u>, 219 Va. 492, 247 S.E.2d 704 (1978), that the jury "should not concern [itself] with what may thereafter happen," the Supreme Court addressed the second question regarding the effect of the legislative amendment on the Court's prior holding. It stated: "We need not consider the effect of this statutory amendment [which followed <u>Clanton</u> and <u>Hinton</u>] because we rely upon and reaffirm the principle enunciated in [those two prior cases] that it is improper to inform the jury as to the possibility of parole." <u>Peterson</u>, 225 Va. at 297, 302 S.E.2d at 525.

not affect such an analysis. Simmons does not support the proposition that the fact of parole ineligibility alone requires that the jury be so informed. See Roach, 251 Va. at 346, 468 S.E.2d at 111; Mosby, 24 Va. App. at 290, 482 S.E.2d at 74. Indeed, while acknowledging the Simmons holding in cases in which the defendant was parole eligible (or had simply failed to establish parole ineligibility) and thus was not entitled to the instruction, the Virginia Supreme Court has persisted in noting its "consistent[] reject[ion of] efforts to permit jurors to consider a defendant's parole eligibility or ineligibility." See Clagett v. Commonwealth, 252 Va. 79, 94, 472 S.E.2d 263, 272 (1996), cert. denied, __ U.S. __, 117 S. Ct. 972 (1997); Joseph v. Commonwealth, 249 Va. 78, 83-84, 452 S.E.2d 862, 866, cert. denied, __ U.S. __, 116 S. Ct. 204 (1995) (citing the pre-Simmons cases of King v. Commonwealth, 243 Va. 353, 368, 416 S.E.2d 669, 677, cert. denied, 506 U.S. 957 (1992), and Yeatts v. Commonwealth, 242 Va. 121, 127, 410 S.E.2d 254, 258 (1991), cert. denied, 503 U.S. 371 (1992), for the same principle).

In sum, I find no support in the controlling jurisprudence of this Commonwealth for the proposition that either the fact of bifurcation or the fact of parole abolition renders a defendant's status as parole ineligible relevant evidence for the jury's consideration at sentencing. It does not follow that the General Assembly ipso facto rendered this jurisprudence a nullity by expanding the bifurcated procedure to all felony trials and by

23

abolishing parole for all convicted felons.

To the contrary, nothing in the express language of either of the applicable Code sections compels the conclusion that the abolition of parole is relevant evidence for the jury's consideration. Furthermore, as discussed above, when enacting Code §§ 19.2–295.1 and 53.1–165.1 the General Assembly was acting in an area in which the Virginia Supreme Court had already spoken. As such, the General Assembly "is presumed to [have] know[n] the law as the Court has stated it and to [have] acquiesce[d] therein.'" <u>Gilliam</u>, 21 Va. App. at 524, 465 S.E.2d at 595 (quoting <u>McFadden v. Commonwealth</u>, 3 Va. App. 226, 230, 348 S.E.2d 847, 849 (1986)).

Finally, and perhaps most telling, in 1996 the General Assembly failed to approve a bill which would have amended Code § 19.2–295.1 to read as follows:

> Upon request of the Commonwealth or the defendant, the court shall instruct the jury that parole has been abolished for felony offenses occurring on or after January 1, 1995, and on the law regarding the defendant's eligibility for release.

Senate Bill No. 477 (Offered January 22, 1996).[9]

---

[9]The merit of the recommendations made by the Sentencing Commission to the General Assembly to which the dissent alludes are not at issue. The issue is how, if at all, the General Assembly has responded to those recommendations in light of the established jurisprudence in the Commonwealth. Furthermore,

Benton, J., dissenting.

By statute, the General Assembly has mandated that "[a]ny person sentenced to a term of incarceration for a felony offense committed on or after January 1, 1995, shall not be eligible for parole upon that offense."  Code § 53.1-165.1.  I would hold that the trial judge erred in denying Walker's proposed instruction, which would have informed the jury that parole has been abolished in Virginia.[10]  I therefore dissent.

I.

The majority opinion essentially relies upon this Court's

while I agree that important values are at stake in this case, not the least of which is the value the judicial system places on informed decision-making by both judge and jury alike, I believe that, in light of the established law of the Commonwealth, the issue is one properly left to the General Assembly.  In its 1996 Session, the General Assembly plainly rejected a bill which would have required that juries be instructed with respect to the abolition of parole.  Although the issue was again raised by the Virginia Criminal Sentencing Commission's 1996 Annual Report, the General Assembly took no action on the issue in its 1997 Session.

[10]"The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence."  Morrissey v. Brewer, 408 U.S. 471, 477 (1972).

25

recent decision in <u>Mosby v. Commonwealth</u>, 24 Va. App. 284, 482
S.E.2d 72 (1997), and cases decided upon proceedings that arose
under recently abandoned sentencing procedures and before parole
was abolished.[11]  Although this Court in <u>Mosby</u> held "that in

---

[11]Citing several capital murder cases in which the jury was
not instructed on parole before the jury imposed the death
penalty, <u>see, e.g.</u>, <u>Joseph v. Commonwealth</u>, 249 Va. 78, 83-84,
452 S.E.2d 862, 866, <u>cert. denied</u>, ___ U.S. ___, 116 S. Ct. 204
(1995), the concurring opinion posits that the Supreme Court has
"consistently applied the well-established principle that
information concerning parole eligibility is not relevant."  That
analysis ignores the holding in <u>Simmons v. South Carolina</u>, 512
U.S. 154, 171, 114 S. Ct. 2187, 2198 (1994), that when future
dangerousness is at issue a parole ineligible defendant is
entitled as a matter of due process to an instruction on the
unavailability of parole in a capital case.  Moreover, the Court
ruled in <u>Joseph</u> that the defendant was eligible for parole.  <u>See</u>
249 Va. at 84, 452 S.E.2d at 866; <u>see</u> <u>also</u> <u>Clagett v.
Commonwealth</u>, 252 Va. 79, 94, 472 S.E.2d 263, 272 (1996), <u>cert.
denied</u>, ___ U.S. ___, 117 S. Ct. 204 (1997) (finding that
Clagett, who sought a parole ineligibility instruction for the
sentencing of a non-capital charge, failed to prove he was parole
ineligible).  The other death penalty cases cited in the
concurring opinion, <u>King v. Commonwealth</u>, 243 Va. 353, 416 S.E.2d
669 (1992); <u>Eaton v. Commonwealth</u>, 240 Va. 236, 397 S.E.2d 385

26

noncapital felony cases a trial judge is not required to instruct the jury that the defendant, if convicted, will be ineligible for parole," id. at 286, 482 S.E.2d at 72, I believe that decision fails to take into account the effect of the significant statutory changes in Virginia law.

In addition to abolishing parole, the General Assembly revised jury sentencing procedures to provide for bifurcated jury trials in non-capital felony prosecutions. See Code § 19.2-295.1. Code § 19.2-295.1 fundamentally changed the nature of sentencing proceedings in non-capital jury trials. As a result, the concerns that previously justified depriving the jury of information concerning parole no longer exist.[12]

---

(1990); and Williams v. Commonwealth, 234 Va. 168, 360 S.E.2d 361 (1987), were all decided before Simmons. The holding in Simmons now renders the former Virginia rule invalid as to all capital cases where future dangerousness is an issue. Thus, the formerly "well-established principle" has been substantially abrogated by the United States Supreme Court.

[12]The concurring opinion states that "the arguments now raised for instructing the jury on the abolition of parole were rejected" in Peterson v. Commonwealth, 225 Va. 289, 296-97, 302 S.E.2d 520, 525 (1983). However, the Supreme Court stated that it "need not consider the effect of [the 1982] . . . statutory amendment" abolishing parole for repeat offenders. Id. at 297,

27

Under the previous sentencing scheme, juries in non-capital cases would both determine guilt and impose a sentence after a single, unitary trial.  The only criteria juries could consider in sentencing were the range of punishment for the offense and the facts germane to the commission of the offense.  "The theory of our [previous] unitary jury trial [procedure was] that the jury [was] to sentence the offense rather than the offender." Smith v. Commonwealth, 223 Va. 721, 725-26, 292 S.E.2d 362, 365 (1982) (Russell, J., dissenting).  Thus, evidence of aggravating and mitigating factors was not admissible before the jury at the trial of a non-capital criminal offense.  See Weeks v. Commonwealth, 248 Va. 460, 476, 450 S.E.2d 379, 389-90 (1994); Duncan v. Commonwealth, 2 Va. App. 342, 345-47, 343 S.E.2d 392, 394-95 (1986).  By contrast, under the new procedure, at the separate sentencing hearing, "the Commonwealth shall present the defendant's prior criminal convictions," Code § 19.2-295.1, and the defendant may introduce relevant mitigating evidence.  See Pierce v. Commonwealth, 21 Va. App. 581, 466 S.E.2d 130 (1996). The new bifurcated procedure therefore permits an inquiry that is significantly broader in scope.[13]

---

302 S.E.2d at 525.  Moreover, the Court held that Peterson failed to object and the judge correctly declined to raise the issue sua sponte.  See id.

[13]The concurring opinion compares today's bifurcated

28

In addition, within the context of the former unitary trial procedure, the Supreme Court enunciated the rule that in a non-capital jury sentencing "the trial [judge] should not inform the jury that its sentence, once imposed and confirmed, may be set aside or reduced by some other arm of the State." Hinton v. Commonwealth, 219 Va. 492, 495, 247 S.E.2d 704, 706 (1978). Significantly, the Supreme Court noted that "[t]he aim of the rule . . . [was] to preserve, as effectively as possible, the separation of . . . [the] functions [of the judicial and executive branches] during the process when the jury is fixing the penalty, in full recognition of the fact that the average juror is aware that some type of further consideration will usually be given to the sentence imposed." Id. at 496, 247 S.E.2d at 706. In crafting the new sentencing scheme, however, the General Assembly eliminated parole -- the mechanism used by

sentencing scheme, in which parole is undoubtedly unavailable, to the bifurcated capital murder proceedings that pre-dated the new law abolishing parole. It is true that juries are given broad discretion under both schemes. However, the important distinction is that today juries may be exercising their discretion under the misconception that parole is still available. Under the prior capital murder sentence scheme, juries were correct in their belief that parole was available and, thus, were not as likely to abuse their discretion.

29

the executive branch to reduce jury sentences.  Thus, the need to separate the sentencing function of the judiciary from the role of the executive branch in granting parole is no longer a consideration.[14]

The Supreme Court also reasoned in Jones v. Commonwealth, 194 Va. 273, 72 S.E.2d 693 (1952), that a jury should not be informed of parole eligibility because "[s]uch a practice would permit punishments to be based on speculative elements, rather

---

[14]I disagree with the conclusion reached in the concurring opinion that the General Assembly has somehow acquiesced in the court-made rule announced in Hinton.  When the General Assembly abolished parole and revised the jury sentencing procedure, the General Assembly ipso facto rendered the Hinton rule a nullity. The rule was judicially created "to preserve, as effectively as possible, the separation of . . . [the] functions [of the judicial and executive branches] during the process when the jury is fixing the penalty, in full recognition of the fact that the average juror is aware that some type of further consideration will usually be given to the sentence imposed."  219 Va. at 496, 247 S.E.2d at 706.  Now that the General Assembly has rendered moot the concern about separation of powers, the judiciary has complete power to modify the rule that the judiciary itself created.  Changed circumstances and the imperative to avoid misleading juries require judicial action.

than on the relevant facts of the case, and would lead inevitably to unjust verdicts." Id. at 279, 72 S.E.2d at 697. However, because the law today is unambiguous -- parole is completely unavailable to all convicted felons -- the jury's consideration of that fact would not be speculative. On the contrary, informing the jury of the now-certain fact that parole has been abolished would eliminate the very speculation that previously concerned the Supreme Court.

In view of the legislature's abolition of the long standing tradition of parole and the new bifurcated jury sentencing procedure, we mislead jurors and prejudice defendants when we fail to inform jurors that parole is no longer available.

## II.

The overriding purpose of jury instructions is to inform the jury of the applicable law. See Cooper v. Commonwealth, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986). To that end, the trial judge must instruct the jury in a manner that will aid the jury in reaching a proper verdict and that will avoid misleading the jury. See id.; see also 75A Am. Jur. 2d Trial § 1077 (1991). "[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). It is error not to instruct the jury when the jury may make findings based upon a mistaken belief of the law. See Martin v. Commonwealth, 218 Va. 4, 7, 235 S.E.2d

31

304, 305 (1977) (per curiam).

Walker's proffered instruction was necessary because the unavailability of parole was a relevant factor to consider in determining the proper length of his sentence. The Commonwealth's attorney argued to the jury the concept of future dangerousness when he asserted:

> The defendant's behavior in this case was more than wrong. It is scary and it is dangerous. It is life threatening. This defendant is dangerous and needs to be kept off the street for a very long time. I am asking you all to consider the facts in this case and sentence him accordingly.

That argument highlights the relevancy of the duration of the sentence that the jury was asked to levy. The unavailability of parole is unquestionably relevant to the jury's determination of a proper sentence because it reflects the Commonwealth's policy that the defendant will actually serve a sentence of approximately the same length as the sentence levied by the jury.[15]

---

[15]The role and effect of parole on a jury's determination of punishment is demonstrated by the numerous cases cited by the majority in which a jury asked the trial judge for information about parole. See Clagett v. Commonwealth, 252 Va. 79, 94, 472 S.E.2d 263, 272 (1996), cert. denied, ___ U.S. ___, 117 S. Ct. 972 (1997); Peterson v. Commonwealth, 225 Va. 289, 296-97, 302 S.E.2d 520, 525 (1983); Hinton v. Commonwealth, 219 Va. 492, 493, 247 S.E.2d 704, 705 (1978); Jones v. Commonwealth, 194 Va. 273,

32

As a practical matter, it is well known that "[f]or much of our country's history, parole was a mainstay of state and federal sentencing regimes, and every term (whether a term of life or a term of years) in practice was understood to be shorter than the stated term."  Simmons v. South Carolina, 512 U.S. 154, 169, 114 S. Ct. 2187, 2197 (1994) (plurality opinion).  No great leap in logic is required to conclude that because of that history, the jury reasonably could have concluded that Walker's sentence should be increased beyond the appropriate duration to counteract the effect of his likely early parole release.

Moreover, the jurors were most likely misinformed about the current state of Virginia law on parole eligibility.  The abolition of parole in Virginia is a recent change in the law. Indeed, the Virginia Criminal Sentencing Commission, which was created by the General Assembly for the purpose, inter alia, of "[m]onitor[ing] sentencing practices in felony cases . . . and maintain[ing] a database containing the information obtained," Code § 17-235(7), has reported as follows:

> Many judges have argued that parole ineligibility information should be provided so that jurors can make more informed sentence decisions.  It is felt by some that most jurors are not aware of the impact of the new legislation and may be setting long prison terms in the mistaken belief that only

---

275, 72 S.E.2d 693, 694 (1952); Coward v. Commonwealth, 164 Va. 639, 642, 178 S.E. 797, 798 (1935); Mosby v. Commonwealth, 24 Va. App. 284, 482 S.E.2d 72 (1997).

33

> a small portion will actually be served, as occurred under the old parole system.

Va. Crim. Sentencing Comm'n Ann. Rep. 65 (1995) [Hereinafter 1995 Rep.].  The Commission's 1996 Annual Report notes that "[i]t has been speculated that jurors may not be fully aware of the implications of parole abolition and truth in sentencing and may be inflating their sentences."  Va. Crim. Sentencing Comm'n Ann. Rep. 32 (1996).  Similarly, a study in Texas, a state that also traditionally has had jury sentencing, found that among jurors "almost everyone understood that only rarely would the offender serve the entire sentence."  Robert A. Weninger, Jury Sentencing in Noncapital Cases:  A Case Study of El Paso County, Texas, 45 Wash. U. J. Urb. & Contemp. L. 3, 13 (1994).  In light of the prevalent misconception, the Virginia Criminal Sentencing Commission recommended that the law be changed to allow for "jury instructions on the abolition of parole and the 85% minimum time served requirement for offenders sentenced under the new truth in sentencing system."  1995 Rep. at 64.

Adding to jurors' misconception about parole eligibility, under the new sentencing procedures the jury is now given copies of the defendant's prior record of conviction.  See Gilliam v. Commonwealth, 21 Va. App. 519, 465 S.E.2d 592 (1996).  Thus, in many instances a jury will have evidence that the defendant was previously released on parole before completing an earlier imposed sentence.  See id. at 525-26, 465 S.E.2d at 595 (holding that information regarding the defendant's prior sentences may be

34

included in the record of conviction submitted to the jury). From this evidence, a jury will likely infer that its sentence may be tempered by early release on parole.

The courts should not permit jurors to sentence based upon the erroneous belief that parole still exists. "The promise of a community judgment about proper punishment is merely an illusion if those acting on behalf of the community do not know what the sentence they impose actually will mean . . . ." Governor's Comm'n on Parole Abolition & Sentencing Reform Final Rep. 25 (1994). Indeed, when we give "full recognition [to] the fact that the average juror [believes] . . . that some type of further consideration will usually be given to the sentence imposed," Hinton, 219 Va. at 496, 247 S.E.2d at 706, the imperative to give the jury an easy to understand and legally accurate instruction that parole has been abolished is manifest. The failure to inform the jury in effect ensures that the jury will be misled. "[A] juror with misconceptions about the operation of the parole laws could easily infect the other jurors with these misconceptions and thereby cause the assessment of a sentence [to be] based on erroneous beliefs as to when the defendant will really 'get out.'" Note, Jury Sentencing in Virginia, 53 Va. L. Rev. 968, 984 (1967).

Obviously, if the jury is uncertain about the defendant's parole eligibility, the jury's recourse is to impose a lengthier sentence for the purpose of ensuring the defendant actually

35

serves a sentence of the desired duration. To fail to inform the jury that parole has been abolished is to risk "subvert[ing] the will of the legislature by [allowing a jury to impose] a longer sentence than is warranted simply in order to ensure that the defendant's actual period of confinement corresponds to what [the jury] feels is the defendant's due."[16] Id. The prejudice to the defendant is manifest.

I dissent.

---

[16]The inescapable conclusion to be drawn from the majority opinion is that a certain degree of jury ignorance can be tolerated. When parole was available, the jury was not instructed on parole issues because parole was not a judicial matter. Furthermore, the harm of jury ignorance was outweighed by compelling concerns about the separation of the judicial and executive functions and the possibility of jury speculation. With the abolition of parole, the reasons for depriving the jury of complete and accurate information about the state of the law no longer exist. With no compelling reason to withhold relevant information from the jury, the majority opinion cites Mosby and merely adopts the ruling of prior Supreme Court cases that were decided in a different statutory context. The effect of so doing is to unnecessarily countenance ignorance in the administration of justice.