COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Clements and Agee
Argued by teleconference


MICHAEL BELL S/K/A
 MICHAEL SHELDON BELL

MEMORANDUM OPINION[*] BY
v.    Record No. 0139-01-2        JUDGE JEAN HARRISON CLEMENTS
                                         MARCH 12, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Thomas N. Nance, Judge

Wayne R. Morgan, Jr., for appellant.

Eugene Murphy, Assistant Attorney General
(Randolph A. Beales, Attorney General, on
brief), for appellee.


Michael Bell was convicted in a bench trial[1] of five counts of grand larceny, five counts of uttering, four counts of forgery, and one count of attempted escape with force from police custody.  On appeal, he contends the evidence was insufficient to sustain the convictions.  We agree and reverse the convictions.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential

    * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

    [1] With the exception of the entry of the sentencing order entered nunc pro tunc on March 7, 2001, from which this appeal was officially taken, the Honorable James B. Wilkinson presided over the proceedings addressed in this opinion.

value, this opinion recites only those facts and incidents of the proceedings as necessary to the parties' understanding of the disposition of this appeal.

When the sufficiency of the evidence is challenged on appeal, we review the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1997). We are further mindful that the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact[ ]finder's determination." Keyes v. City of Virginia Beach, 16 Va. App. 198, 199, 428 S.E.2d 766, 767 (1993). We will not disturb the conviction unless it is plainly wrong or unsupported by the evidence. Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d. 897, 898 (1985).

A. Grand Larceny, Uttering, and Forgery

Before trial, Bell was arraigned on indictments charging him with fourteen offenses related to the cashing of counterfeit checks at a Q-Market store in Richmond, as follows:

| Case # | Offense | Date of Offense | Code § |
|--------|---------|-----------------|--------|
| 00-1770-F | Grand Larceny | 8/20/00 | 18.2-95 |
| 00-1771-F | Uttering (Check for $317.98) | 8/20/00 | 18.2-172[2] |

---

[2] The indictment in case number 00-1771-F made no reference to Bell. Instead, it read as follows:

- 2 -

| 00-1772-F | Grand Larceny | 8/9/00 | 18.2-95 |
|---|---|---|---|
| 00-1773-F | Grand Larceny | 8/9/00 | 18.2-95 |
| 00-1774-F | Grand Larceny | 8/7/00 | 18.2-95 |
| 00-1775-F | Grand Larceny | 8/7/00 | 18.2-95 |
| 00-1776-F | Forgery (Check for $228.73) | 8/7/00 | 18.2-172 |
| 00-1777-F | Uttering (Check for $228.73) | 8/7/00 | 18.2-172 |
| 00-1778-F | Forgery (Check for $458.12) | 8/9/00 | 18.2-172 |
| 00-1779-F | Uttering (Check for $458.12) | 8/9/00 | 18.2-172 |
| 00-1780-F | Forgery (Check for $451.12) | 8/9/00 | 18.2-172 |
| 00-1781-F | Uttering (Check for $451.12) | 8/9/00 | 18.2-172 |
| 00-1782-F | Forgery (Check for $463.00) | 8/7/00 | 18.2-172 |
| 00-1783-F | Uttering (Check for $463.00) | 8/7/00 | 18.2-172 |

Bell pled not guilty to each charge.[3]

_____

The GRAND JURY charges that:

On or about August 20, 2000, in the City of Richmond,

MILLARD MAURICE WATKINS

did feloniously and unlawfully utter a counterfeit check #9332, in the amount $317.98, or attempt to employ as true knowing such to be forged.

Nothing in the record indicates that the indictment was amended. Watkins, who, like Bell, was arrested for passing counterfeit checks at the Q-Market store, testified on Bell's behalf at trial and, after being advised of his Fifth Amendment rights, admitted that he, not Bell, was responsible for cashing the counterfeit checks in question.

[3] The sentencing order entered in this matter erroneously recited that Bell "pleaded guilty to said charges" and that the trial court "found for a fact that the defendant's pleas of

- 3 -

Following the Commonwealth's presentation of evidence at trial, Bell moved to strike the evidence related to these charges, arguing the Commonwealth failed to prove that he was the one who cashed the counterfeit checks. He argued that, in the absence of proof that he cashed the checks, the Commonwealth's evidence failed to prove the charged offenses related to the counterfeit checks. The trial court denied the motion and found Bell "guilty, as charged."

On appeal, Bell renews his argument that the Commonwealth's evidence was insufficient to prove that he was the person who cashed the counterfeit checks at the Q-Market store. He argues that, even though his name was on the counterfeit checks, the Commonwealth failed to otherwise connect him to any of the specific checks cashed.

The Commonwealth concedes, on appeal, that the evidence was insufficient to sustain the uttering conviction in case number 00-1771-F, the grand larceny conviction in case number 00-1773-F, the forgery conviction in case number 00-1780-F, and the uttering conviction in case number 00-1781-F. However, as to the remaining ten convictions concerning the cashing of the counterfeit checks, the Commonwealth contends its evidence was sufficient to show that Bell was the one who cashed the subject counterfeit checks.

guilty were made freely, voluntarily and intelligently and were accordingly accepted."

"In every criminal prosecution the Commonwealth must establish beyond a reasonable doubt all elements of the offense and that the accused did commit it."  Harward v. Commonwealth, 5 Va. App. 468, 470, 364 S.E.2d 511, 512 (1988).  Thus, to sustain the grand larceny, uttering, and forgery convictions in this case, the Commonwealth had to prove beyond a reasonable doubt, inter alia, that Bell was the individual who cashed the subject checks in the Q-Market store.  See Code §§ 18.2-95 and 18.2-172; see also Jones v. Commonwealth, 3 Va. App. 295, 300, 349 S.E.2d 414, 417 (1986) (defining "larceny" as "the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently"); Walker v. Commonwealth, 25 Va. App. 50, 58, 486 S.E.2d 126, 131 (1997) (defining "uttering," in this context, as putting "a forged check into circulation"); Fitzgerald v. Commonwealth, 227 Va. 171, 174, 313 S.E.2d 394, 395 (1984) (holding that "[p]ossession of a forged check by an accused, which he claims as a payee, is prima facie evidence that he either forged the instrument or procured it to be forged").

Here, the Commonwealth introduced into evidence four counterfeit checks drawn on the account of Care Advantage, Inc. and made out to "Michael Bell," as follows: (1) dated August 15, 2000, in the amount of $317.98, (2) dated August 7, 2000, in the amount of $228.73, (3) dated August 9, 2000, in the amount of $458.12, and (4) dated August 7, 2000, in the amount of $463.00.

Rateb Al-Ahmad, who, along with his brother, managed the Q-Market store, identified each of the checks as having been cashed at the Q-Market store. He testified that he and his brother, who did not testify, were "in charge of cashing all the checks." He also testified that he saw Bell in the Q-Market store two or three times and cashed "at least two checks" for him. He could not, however, identify which checks he cashed for Bell or say conclusively that Bell cashed any of the four checks presented at trial by the Commonwealth. Likewise, he admitted there was nothing on the checks to show whether he or his brother had cashed them. He further acknowledged that other people had cashed similar counterfeit checks in the store during that same period of time and offered no testimony of any method used by the store to assure that only the payee listed on the check could cash it.

Detective Arthur Rucker testified that, when he investigated the reported passing of counterfeit checks at the Q-Market store, Al-Ahmad and his brother gave him "a large number of checks from Care Advantage that were forged." According to Rucker, Al-Ahmad and his brother then identified Bell from a photographic lineup as one of the people who "they said presented the checks." Detective Rucker was unable, however, to draw any connection between that identification and the four specific counterfeit checks in evidence. He also

admitted that Bell was not the only suspect arrested for cashing counterfeit checks at the Q-Market store.

Finally, Detective J.P. Foust testified that he interviewed Bell following his arrest. According to Foust, Bell admitted that "he did pass some checks at the Q-Market." However, even were we to assume that this "admission" encompassed the passing of counterfeit checks at the Q-Market store, Detective Foust offered no evidence connecting Bell to the specific counterfeit checks introduced at trial or any other specific checks.

It is well settled in Virginia that, to sustain a conviction, "the evidence, viewed in the light most favorable to the Commonwealth, must go further than to create a mere suspicion or probability of guilt; it must exclude every reasonable hypothesis except that of guilt." Stamper v. Commonwealth, 220 Va. 260, 272, 257 S.E.2d 808, 817 (1979), cert. denied, 445 U.S. 972 (1980). Furthermore, circumstantial evidence is entitled to the same weight as direct evidence only to the extent that "it is sufficiently convincing." Id.

We conclude, therefore, that, because it presented no evidence at trial, circumstantial or otherwise, that convincingly linked Bell to the four specific counterfeit checks upon which the instant charges were based, the Commonwealth failed to prove beyond a reasonable doubt that it was Bell who cashed the subject counterfeit checks. Thus, the Commonwealth's evidence was insufficient, as a matter of law, to prove beyond a

reasonable doubt that Bell committed the charged crimes of grand larceny, uttering, and forgery. Consequently, we hold that the trial court erred in overruling Bell's motions to strike the evidence as to those charges.

### B. Attempted Escape

Bell was also arraigned before trial, in case number 00-1784-F, on an indictment charging him with attempted escape with force from police custody.[4] Bell pled not guilty to the charge. At the conclusion of the Commonwealth's case, Bell moved to strike the evidence as to the attempted escape with force charge on the ground that there was no evidence that Bell's attempted escape was "with force." The trial court overruled the motion, finding that "[i]t took three officers to

---

[4] The indictment in case number 00-1784-F read, in pertinent part, as follows:

> On or about September 13, 2000, in the City of Richmond,
>
> MICHAEL BELL . . .
>
> did feloniously and unlawfully, having been . . . in the custody of . . . a law enforcement officer on a charge . . . of a felony, attempt to escape such . . . custody with force.

However, the indictment, in contradistinction to its express charge that Bell attempted to escape police custody with force, erroneously cited Code § 18.2-479, rather than Code §§ 18.2-478 and 18.2-26, a mistake that was repeated in the sentencing order.

subdue him."  At the conclusion of the evidence, the trial court found Bell "guilty, as charged."

Bell argues, on appeal, that the Commonwealth failed "to show one scintilla of evidence" that he used any force in attempting to escape.  The Commonwealth argues that the evidence in the record "makes clear that Bell struggled with the officers when they attempted to return him to the patrol wagon after he had run away."

To prove the crime of attempted escape with force, the Commonwealth must prove beyond a reasonable doubt, inter alia, "that by the use of force or violence" the person in police custody attempted to leave "such custody without lawful permission."  Henry v. Commonwealth, 21 Va. App. 141, 147-48, 462 S.E.2d 578, 581 (1995) (construing Code § 18.2-478).  "The word 'force' means 'power dynamically considered [or] strength directed to an end.'"  Id. at 148, 462 S.E.2d at 581 (alteration in original) (quoting Black's Law Dictionary 644 (6th ed. 1990)).

Here, the uncontradicted evidence, viewed in the light most favorable to the Commonwealth, established that Bell was found hiding in the attic of a residence by the police and placed under arrest for passing counterfeit checks.  He was led to the front porch of the residence to await the arrival of a patrol wagon to transport him.  When the patrol wagon pulled up, Bell told the police officer with him that he did not "want to go in

- 9 -

the back of the wagon."  The officer said, "Come on, Michael, let's go," and took a step towards the wagon.  At that point, Bell "took off running."  He ran approximately thirty yards before three officers caught him and put him "on the ground." Bell was then escorted to the wagon.

Contrary to the trial court's finding, this evidence fails to show that Bell attempted to leave police custody by the use of force or violence.  It shows, rather, that Bell attempted to escape by merely running away from the officer accompanying him at the time.  Any force or violence possibly attributable to Bell by reasonable inference occurred only when the officers were putting him on the ground, well after the attempt to escape was completed.

Thus, we conclude the Commonwealth's evidence does not support the trial court's finding that Bell's attempted escape from police custody was "with force."  Compare id. at 145-46, 462 S.E.2d at 580 (finding appellant escaped from police custody with force where appellant struck officer immediately before fleeing from him).  The Commonwealth having failed to prove an element necessary to sustain a conviction of attempted escape with force, we hold that the trial court erred in overruling Bell's motion to strike the evidence as to the attempted escape with force charge.

Accordingly, we reverse Bell's convictions and dismiss the indictments.

Reversed and dismissed.